**BAKERS UNION FACTORY, #326,**
Plaintiff-Appellee,

v.

**ITT CONTINENTAL BAKING COMPA-
NY, INC., Defendant-Appellant.**

Nos. 83–1451, 83–1761.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 3, 1984.

Decided Nov. 29, 1984.

Edwards, J., filed a dissenting opinion.

Edwin C. Thomas, Jeffrey A. Blevins, Sara McL. Green (argued), Bell, Boyd & Lloyd, Chicago, Ill., David H. Paruch, Clark, Klein & Beaumont, Detroit, Mich., for defendant-appellant.

L. Rodger Webb (argued), Maurer, Kalls & Webb, Detroit, Mich., for plaintiff-appellee.

Before EDWARDS and MARTIN, Circuit Judges and SILER, Chief Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

The question before us is whether a labor arbitrator has the authority to reinstate an employee who was dismissed pursuant to the terms of a prior, written settlement agreement which was entered into by the company and the union in accordance with the grievance procedures established by the collective bargaining agreement. Initially we must determine whether this issue was properly preserved for appeal.

ITT Continental Baking Company appeals from an order of the district court enforcing an arbitration award under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The award set aside the Company's discharge of employee James Tolbert. Bakers Union Factory Local 326 is the certified bargaining representative for production and maintenance employees at the Company's Wonder Bread Factory, where Tolbert was employed.

The conflict between the parties is a result of Tolbert's drinking problems. On February 20, 1981, Tolbert was suspended from his job because he was intoxicated while at work. The Company rescinded the suspension when Tolbert agreed to attend biweekly meetings at Alcoholics Anonymous. On May 1, 1981, Tolbert again was intoxicated on the job, but still the Company agreed to work informally with him on his problem. On October 19, 1981, Tolbert once again appeared on the job intoxicated; this time the Company suspended him and refused to rescind the suspension.

The Union filed a grievance over the suspension. Pursuant to the formal grievance procedures of the collective bargaining agreement, the Company, the Union, and Tolbert attended a third-step grievance meeting. A third-step meeting is the last grievance procedure before arbitration. The product of that meeting was a written agreement among the parties. Pursuant to that agreement of December 7, 1981, the Company agreed to rescind the suspension and Tolbert agreed to follow the recommendations of the Garden City Hospital Alcoholism Treatment Program, attend weekly Alcoholics Anonymous meetings, take antibuse pills daily, and continue total abstinence from alcohol. The agreement put Tolbert on a six-month probationary period and provided that Tolbert's adherence to the agreement was a condition of employment. Specifically, the agreement stated, "Failure to comply with any of the [stated conditions] or any alcohol related infractions at work will result in dismissal." All three parties signed the agreement.

On January 26, 1982, an official from the Garden City Hospital Alcoholism Treatment Program notified the Company that Tolbert had not attended his treatment sessions for the prior two weeks. The Company confronted Tolbert with this information and he responded by claiming that car trouble and financial difficulty prevented his attendance at the sessions. The Company suspended Tolbert, the parties negotiated

pursuant to the formal grievance procedures, and Tolbert ultimately was notified in writing of his discharge. The Union protested the result reached under the grievance procedure, and an arbitrator was selected.

The arbitrator found that the conditions of the December 7 settlement agreement were understood by Tolbert and the Union and that Tolbert had, in fact, violated the terms of the agreement. Calling the agreement "reasonable and humanitarian," the arbitrator concluded "there was certainly just and proper cause for discipline in this case." Nevertheless, he held that the penalty of discharge was too severe under the circumstances of the case. Citing Tolbert's "long years of seniority" with the Company, the arbitrator found that, although he had "severe misgivings," Tolbert "should be offered one last opportunity to salvage his work career and perhaps his life." Accordingly, the arbitrator reinstated Tolbert on the condition that he agree to be bound by an agreement the terms of which were substantially identical to those of the parties' own prior settlement agreement.

The Company refused to reinstate Tolbert, and the Union sought enforcement of the arbitrator's award in district court. On cross motions for summary judgment the court held that, although the settlement agreement contemplated that Tolbert's failure to comply with the conditions would result in dismissal, the parties did not intend that the agreement would preclude further resort to the collective bargaining agreement. Therefore, the arbitrator did not exceed his authority in disregarding the penalty imposed by the settlement agreement. This appeal ensued.

1. After the Company filed a notice of appeal from the district court's order and the district court transmitted to this Court the record in the proceedings to enforce the arbitrator's award, the Union filed with the district court a motion to supplement the record under Fed.R.App.P. 10(e). In particular, the Union sought to include the Company's post-hearing brief to the arbitrator as part of the record. The district court granted the motion, and the Company

■ Initially, the Union contends that we may not properly consider the issue whether the arbitrator exceeded his authority in disregarding the settlement agreement. In the Union's view, the Company waived its right to pursue this issue on appeal because the Company failed to raise it in the arbitration proceedings. The Company responds by claiming that it did raise the issue before the arbitrator and, in the alternative, that the Union waived *its* waiver argument by not raising it in the district court. We believe that the Company preserved the issue whether the arbitrator exceeded his authority; we therefore need not consider the Company's alternative argument.

The record reveals that the Company raised before the arbitrator the contention that the settlement agreement controlled the parties' obligations and that the arbitrator lacked authority to alter those obligations. In his written opinion, the arbitrator states: "The employer submits that this discharge was proper because [Tolbert] did indeed violate the [settlement agreement]." The arbitrator continued, "[T]he employer points to the [settlement agreement] as constituting [Tolbert's] last chance. It contends that this arbitrator should not force another 'last chance' upon the company." In its post-hearing brief [1] the Company noted, "By far the most important point is that the probationary agreement constituted the grievant's last chance, and this arbitrator should not force another last chance upon the Company." Additionally, the Company quoted that part of *Mohawk Rubber Co.*, 47 L.A. 1029 (Teple 1966), which holds:

When a "last chance" understanding has been reached, another chance must rest entirely within the Company's discretion. The Arbitrator has no authority to grant

appealed. This Court consolidated that appeal, No. 83-1761, with the appeal from the order granting enforcement of the arbitrator's decision, No. 83-1451.

We will affirm the decision in No. 83-1761 on the sole basis that, given our reading of the Company's post-hearing brief, the Company has not been prejudiced by inclusion of that brief in the record.

another chance when it has been agreed that no further chance is expected or will be given.

*Id.* at 1035. Finally, in its motion to reconsider submitted to the arbitrator, the Company argued, "The Union, [Tolbert] and the Company agreed [in the settlement agreement] that discharge was the only appropriate disciplinary action, and that binding decision removed authority from the arbitrator to decide otherwise." Although the Company's framing of the issue may have been less than precise, we do believe that the issue was presented with sufficient clarity to preserve the issue for appeal. *Cf. Moreau v. Oppenheim*, 663 F.2d 1300, 1307 (5th Cir.1981), *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982); *Tiger Trash v. Browning-Ferris Industries, Inc.*, 560 F.2d 818, 824–25 (7th Cir.1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978). Particularly probative is the Company's quotation from the arbitrator's decision in *Mohawk Rubber Co.*

That brings us to the central issue in this case: did the arbitrator have the authority to disregard the explicit terms of the prior settlement agreement reached by the parties? The district court held that the arbitrator properly ignored the settlement agreement because the parties did not contemplate that the settlement agreement would constitute an amendment or addendum to the collective bargaining agreement. Because the settlement agreement did not amend the collective bargaining agreement, the argument goes, the arbitrator retained his authority under the collective bargaining agreement to determine whether the penalty imposed by the employer under the settlement agreement was too harsh.

We decline to endorse the formalist approach adopted by the district court. In focusing on the question whether the settlement agreement constituted a formal amendment to the collective bargaining agreement, the district court failed to adopt the rule of law that most effectively implements the intent of the parties and the policy behind the Labor Management Relations Act, 29 U.S.C. § 185.

The district court noted that the federal courts will overturn the decision of an arbitrator only if the arbitrator acted in excess of the authority granted by the collective bargaining agreement. The purpose of this limited scope of review is to promote the finality of arbitration. The Union urges that our policy in favor of the finality of arbitration and the concomitant rule restricting the scope of review are dispositive of the issue presented here.

We believe that the Union has defined federal labor policy too narrowly. The policy in favor of the finality of arbitration is but one part of a broader goal of encouraging informal, i.e., non-judicial, resolution of labor disputes.

> It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration.

*United Mine Workers v. Barnes & Tucker Co.*, 561 F.2d 1093, 1096 (3d Cir.1977).

■ Once this broader policy is acknowledged, the deficiency in the Union's position becomes clear. The general rule is that federal courts will defer to the judgment of the arbitrator as long as his or her decision "draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). This rule is designed to implement the federal policy in favor of the finality of arbitration. The rationale for a restricted scope of review was stated in *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). There the Court held:

> [T]he moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

> The courts, therefore, have no business weighing the merits of the grievance,

considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.

*Id.* at 568, 80 S.Ct. at 1346. Parties who reach a settlement pursuant to a formal grievance procedure have not bargained for an arbitrator's construction of the collective bargaining agreement: they have bargained for their own construction.

■ When a party claims that a prior settlement agreement controls the parties' obligations, the policy in favor of the finality of arbitration must yield to the broader policy in favor of the parties' chosen method of non-judicial dispute resolution. When the former policy gives way to the latter, the rule restricting our scope of review—a rule designed to implement the former policy—necessarily loses its foundation.

The force of this argument is not diminished by the claim that the question whether an arbitrator is bound by a settlement agreement is itself a question for the arbitrator to decide. That claim is based on circular reasoning. The claim that it is for the arbitrator to determine whether he or she is bound by a settlement agreement is based on a monolithic view of the dispute resolution process. The arbitrator is seen as the authoritative interpreter of the collective bargaining agreement: the non-arbitral grievance procedure is a mere warm-up for the main event. A party places this conception in controversy by offering a binary view of the dispute resolution process. Arbitration is seen as only one means of achieving an interpretation of the collective bargaining agreement; another means is private settlement. We presume that parties who have reached a settlement agreement also have reached an (at least) implicit agreement that their settlement is binding. The claim that it is for the arbitrator to decide whether the collective bargaining agreement calls for a monolithic or binary view of the dispute resolution process is itself based on the former view. The proposed method for determining whether the contract calls for a monolithic or binary

view presupposes a resolution of the very issue in controversy. The reasoning is circular.

■ Our tradition of deference to arbitral decisions is not based on a solicitude for arbitrators. That tradition is based on our desire to give effect to the parties' chosen means of dispute resolution. When a party claims that the chosen means of dispute resolution is private settlement, we have no reason to defer to the arbitrator's decision. Therefore, we will not defer to the arbitrator's determination of his or her authority to override the terms of a settlement agreement in that narrow category of cases in which a party claims that the chosen means of dispute resolution is private settlement rather than arbitration.

Our conclusion that the Union may not rely on a narrow scope of review in this case, however, does not dispose of the issue presented. We still must determine whether the arbitrator exceeded his authority when he ignored the parties' prior settlement agreement. Although the parties may by contract provide that settlement agreements are subject to subsequent arbitration, we conclude that the parties in this case did not so provide.

■ Initially, we embrace a presumption that parties who reach a settlement pursuant to the terms of a collective bargaining agreement do not intend that an arbitrator may amend the terms of the settlement agreement. This presumption is well supported by reason and precedent. As the Company points out, the district court's ruling that an arbitrator is not bound to enforce the parties' prior settlement agreement undermines the viability of a system that seeks to encourage settlements reached without the aid of an arbitrator. If the district court's view were to prevail, a party who became unhappy with a settlement agreement would have every incentive to breach the agreement and then submit the controversy to an arbitrator. That is precisely what happened here. The result of such a scheme would be the erosion of the mutual trust that is necessary to reach settlement agreements; the ultimate

effect would be that few settlements would be reached and most controversies submitted to arbitration.

■ The presumption that a settlement agreement is binding on the arbitrator also finds support in the case law. It is beyond dispute that a settlement agreement reached short of formal arbitration is entitled to enforcement in the federal courts if the agreement is final and binding on the parties. *United Mine Workers v. Consolidation Coal Co.*, 666 F.2d 806, 809 (3d Cir.1981); *United Mine Workers v. Barnes & Tucker Co.*, 561 F.2d 1093, 1096 (3d Cir.1977). If a party may enforce a settlement agreement in federal court without first submitting the controversy to an arbitrator, it is reasonable to endorse a presumption that an arbitrator to whom the dispute is submitted is bound by the terms of that agreement no less than the court would be.

■ Additional case law supports the conclusion that even if the settlement agreement is not final and binding in the sense that it can be enforced in federal court without first having been submitted to an arbitrator, the settlement agreement still is binding on the arbitrator. Several courts have found, under the terms of a specific collective bargaining agreement, that a settlement agreement must be submitted to an arbitrator before it may be enforced in federal court. *United Mine Workers v. Consolidation Coal Co.*, 666 F.2d 806 (3d Cir.1981); *Office and Professional Employees International Union, Local 9 v. Allied Industrial Workers International Union*, 397 F.Supp. 688 (E.D. Wis.1975), *aff'd*, 535 F.2d 1257 (7th Cir. 1976); *International Union of Operating Engineers, Local 564 v. Dow Chemical Co.*, 348 F.Supp. 1149 (S.D.Tex.1972). Each of these decisions clearly implied that when the settlement agreement was taken to arbitration on remand, the arbitrator would be bound by the terms of the agreement. *Consolidation Coal Co., supra*, at 811; *Allied Industrial Workers, supra*, at 692; *Dow Chemical Co., supra*, at 1153. For example, in *Dow Chemical Co.*, the

court refused to enforce the settlement agreement because "this dispute over the settlement provisions is in itself arbitrable by the terms of the collective bargaining agreement." *Dow Chemical Co., supra*, at 1153. The question to be decided on remand was not the merits of the underlying controversy; rather, the question was "whether the Union is correct in its assertion that the company has breached the settlement provisions." *Id.*

Two other lines of cases also support our conclusion that a settlement agreement is presumptively binding on the arbitrator. The National Labor Relations Board generally will refuse to hear an unfair labor practice charge when the controversy previously has been settled by the parties. *Coca-Cola Bottling Co.*, 243 N.L.R.B. 501 (1979); *Central Cartage Co.*, 206 N.L.R.B. 337 (1973). Although not free from doubt, this practice has been endorsed by the courts. *Roadway Express, Inc. v. NLRB*, 647 F.2d 415 (4th Cir.1981). *See NLRB v. A. Duie Pyle, Inc.*, 730 F.2d 119 (3d Cir. 1984) (collecting cases). The purpose of the Board's deferral policy is to encourage the parties to avoid "possible time-consuming and costly additional litigation or formal arbitration." *Central Cartage Co.*, 206 N.L.R.B. at 338. The reasoning of the Board is persuasive whether the party seeks to re-open litigation before the Board or before an arbitrator.

Finally, courts have found that an agreement settling an employee grievance prevents the employee from seeking relief on a non-labor law cause of action. In *Suissa v. American Export Lines, Inc.*, 507 F.2d 1343 (2d Cir.1974), the court held that a seaman whose grievance had been settled could not bring a claim for statutory penalties under 46 U.S.C. § 596. Similarly, in *Griess v. Climax Molybdenum Co.*, 488 F.Supp. 484 (D.Colo.1980), the court held that an employee who had been discharged for violating the conditions of a prior settlement agreement could not bring an action for emotional and psychological damage. Both cases were decided on the basis of "[t]he general rule . . . that in the absence

of misrepresentation by the union, settlement of an employee grievance is binding on the employee." *Griess, supra,* at 487; *see Suissa, supra,* at 1347. The rule in favor of the finality of settlement agreements promotes "the union's interests in affording quick and inexpensive protection to those it represents," *Suissa, supra,* at 1347, and protects employers, who otherwise "would have little reason to rely upon terms of [a] settlement proposed by the Union if the finality of any arrangement were subject only to the whims of affected employees." *Id.* at 1348.

■ Although we conclude that an arbitrator is presumptively bound by the terms of a written settlement agreement, that presumption may be overcome by a contrary, unambiguous provision in the parties' collective bargaining agreement. No such contrary provision is present in the record before us.

The parties' collective bargaining agreement provides for two means of non-judicial dispute resolution. First, the parties may negotiate pursuant to the grievance procedure and reach a settlement without invoking the aid of an arbitrator. That is the process by which the parties reached the settlement agreement at issue here. Second, if the grievance procedure fails, the parties may submit the dispute to an arbitrator. The terms of the collective bargaining agreement indicate that success at the settlement stage precludes later resort to arbitration. Article 19 of the collective bargaining agreement provides: *"Step 4.* If a satisfactory result has not been concluded after the procedure outlined in step 3, whereby the dispute has not been settled, then the matter will be taken up as outlined in the Arbitration Article." The Arbitration Article, Article 21, provides: "If any dispute or disagreement arises between the parties hereto, during the life of this agreement, *that cannot be settled in accordance with the Grievance Procedure,* Article Nineteen (19), the matter will be taken up in the following manner ...." (emphasis added). As these provisions make evident, a party who prevails at the level of the grievance procedure has no right to proceed to arbitration. The terms of the collective bargaining agreement, aided by the presumption that an arbitrator is bound by the terms of a settlement agreement, indicate that the arbitrator exceeded his authority when he reinstated employee James Tolbert.

■ Finally, we wish to make explicit that our decision does not give parties license to by-pass the arbitration procedure in favor of direct access to the federal courts. The question whether a settlement agreement was intended to cover the activities involved in the controversy is an arbitrable issue. *International Union of Operating Engineers, Local 564 v. Dow Chemical Co.,* 348 F.Supp. 1149 (S.D.Tex. 1972). Likewise, an arbitrator may determine whether the settlement agreement has, in fact, been breached and whether the union has breached its duty of representation with respect to its members. These determinations retain the benefit of a deferential standard of review.

■ Applying these principles to the present case, we find that there can be no doubt that the settlement agreement was intended to cover the activities that resulted in this controversy. The parties' settlement agreement dealt specifically with the past and future conduct of one employee— James Tolbert. No one has ever disputed that Tolbert in fact breached the terms of the agreement. Likewise, the parties agree that the settlement treated Tolbert fairly and equitably. Indeed, the arbitrator found that the settlement agreement was "reasonable and humanitarian."

Accordingly, the judgment of the district court is reversed and the case is remanded to the district court with instructions to vacate the award of the arbitrator.

GEORGE CLIFTEN EDWARDS, Jr., dissenting.

District Judge Cook enforced an arbitrator's award which had the effect of putting back to work an alcoholic employee who had previously signed a "last chance"

agreement after he had been discharged for drunkenness on the job. Subsequently he was charged with violating the agreement by failing twice to attend Alcoholic Anonymous meetings and discharged by the Company.

On arbitration of his discharge, as called for by the labor management agreement, one of the two failures was excused by the arbitrator who heard the grievance and ordered that he be given yet "another chance." It should be noted that his discharge is not based on any repetition of any employment offense.

My respect for the use of arbitration in labor management procedures helps to motivate my conclusion that Judge Cook was correct in accepting the arbitrator's award. Much more importantly, this conclusion is also motivated by the strong preference for arbitration of labor disputes expressed by the United States Supreme Court in *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).