**VOSS STEEL EMPLOYEES UNION and Ronald Rowe, Plaintiffs,**

v.

**VOSS STEEL CORPORATION, Defendant.**

**No. 91–CV–76315–DT.**

United States District Court, E.D. Michigan, S.D.

July 28, 1992.

Jan Leventer, Detroit, Mich., for plaintiffs.

William Hooth, Troy, Mich., for defendant.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

This is an employment case. Plaintiff, Ronald Rowe (Rowe) was discharged from his employment with Defendant, Voss Steel Corporation (VSC) for violating the company's drug policy. Rowe grieved his discharge. Pursuant to the terms of the collective bargaining agreement (CBA) between VSC and Plaintiff, Voss Steel Employees Union (Union), the grievance was submitted to arbitration. The arbitrator concluded that VSC's drug policy was not contained within the CBA and, therefore, Rowe's discharge violated the CBA. The arbitrator awarded Rowe reinstatement without backpay. VSC refused to reinstate Rowe and this action to enforce the arbitration award followed. Now before the Court is plaintiffs' motion for summary judgment and VSC's cross-motion for summary judgment. For the reasons stated below, plaintiffs' motion will be denied and VSC's motion will be granted.

### II.

#### A.

The facts are not in dispute.[1] Rowe was a fifteen year employee of VSC at the time of his discharge. Rowe was employed as an outside high-lo driver and his duties involved locating rolls of steel in the outside yard and transferring them to the plant for processing. He was also assigned to operate the gantry crane, which runs overhead and is used to locate and transfer steel coils in the storage yard.

On January 12, 1990, Rowe had an accident while operating the gantry crane. A drug screening test was performed on Rowe, pursuant to VSC's policy requiring a test when an employee was involved in a serious accident. Rowe tested positive for both cocaine and marijuana.

The test results were received by VSC's president, Jim Voss (Voss), on January 18, 1990. On that date, Voss met with Rowe and three Union representatives: Union president Rasik Patel (Patel), Jim Arbuckle, and Bill Mudloff. The Union representatives requested and VSC agreed that, rather than terminate Rowe, he would be placed under VSC's drug policy. Accordingly, VSC sent a letter agreement to Rowe, which provided in pertinent part:

As a result of an equipment accident on Friday, January 12, 1990 which you were operating and damage occurred you were sent to the clinic (Airport Medical Industrial Clinic) for a drug screening. We are

---

1. The parties acknowledge that the facts are correctly described in the arbitrator's opinion and award.

sorry to inform you that your results were positive for Cannabinoids (marijuana) and cocaine. Therefore, we have no other alternative than to follow the Company's Policy on Drugs.

1. You are suspended without pay for 30 days.

2. You will seek out and enter an approved drug rehabilitation program either as an outpatient or inpatient as the program would decide no later than Thursday, January 25, 1990.

* * *

5. If at the end of 30 days the program supervisor reports that you have kept all scheduled appointments, have not used any drugs and pass a drug screening test at the Company clinic you will be allowed to return to work. If you fail to actively participate in the program, during this period your suspension will be changed to termination of employment with Voss Steel Corporation.

6. During a period of two years after your return to work the Company, at its sole discretion, will ask you to return to the clinic for drug screen tests. You will also agree to continue the selected program if it is recommended by the program supervisor.

7. If your test at the end of the original thirty (30) day layoff or one of the random tests during the following years show positive for illegal drugs your employment at Voss Steel will be terminated immediately upon confirmation of the test results by the clinic.

Rowe signed the letter to "acknowledge receipt ... and agree to the conditions·it contains." The letter was not signed by a Union representative.

Rowe was sent for a random drug test on November 19, 1990. VSC admits that there was no reason to believe that Rowe was under the influence of drugs at the time of the test. The test results were positive for marijuana. Rowe was discharged for violating the terms of the company's drug policy as stated in the letter agreement.

**B.**

The CBA in effect between VSC and the Union at the time of Rowe's discipline and subsequent discharge was effective November 1, 1989 for a period of three years. During the negotiations preceding the CBA, the subject of a drug policy was discussed on several occasions. In July 1989, VSC implemented a drug policy for salaried employees, which contained the same conditions are stated in the letter agreement with Rowe, *supra.* The tentative agreement reached between the Union and VSC on October 31, 1989 provided, in relevant part:

The Company retains the right to develop proper rules under Section 1 of Article XXVI and will develop and put into effect a Drug and Alcohol Policy during this contract that will be uniform for salary and plant employees. The Company will discuss the new Drug and Alcohol Policy with the Union prior to putting it into effect.

The drug policy was presented to Patel at a meeting with Voss in December 1989. There was no discussion between VSC and the Union on the subject of the drug policy until the meeting on January 18, 1990.

**III.**

The arbitrator reasoned that the Drug and Alcohol Policy addressed in the tentative agreement "never found its way into the collective bargaining agreement." The arbitrator observed that the drug policy, as it related to plant employees, was not announced, posted or implemented by VSC, nor signed by the Union. The letter agreement signed by VSC and Rowe was the only instance in the record of the policy being applied to a member of the collective bargaining unit. The arbitrator concluded that the drug policy was, therefore, not adopted and did not operate to modify the CBA.

The arbitrator next observed that "last chance" agreements, such as that between Rowe and VSC, are "to be scrupulously but

narrowly enforced by their terms, and are binding only upon the signatories." The arbitrator reasoned that, inasmuch as the Union had not signed the last chance agreement, the Union preserved its right to enforcement of the terms of the CBA. Under the terms of the CBA, Rowe could only be dismissed with just cause. The arbitrator reasoned that, although Rowe tested positive for the presence of drugs, it had not been shown that Rowe was under the influence of these drugs in the workplace. The arbitrator concluded that Rowe's termination violated the CBA and ordered him reinstated without backpay.

## IV.

### A.

Plaintiffs move for summary judgment enforcing the arbitration award. Relying on *United Steelworkers of America v. American Manufacturing Company*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), *United Steelworkers of America v. Warrior and Gulf Company*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and *United Steelworkers of America v. Enterprise Wheel and Car Corporation*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), plaintiffs argue that the scope of judicial review is very narrow and that an arbitration award must be enforced where it is within the authority of the arbitrator and drew its essence from the CBA. *United Paper Workers International Union v. Misco, Inc.*, 479 U.S. 1029, 107 S.Ct. 871, 93 L.Ed.2d 826 (1987). Plaintiffs assert that the arbitrator's award of reinstatement of Rowe must be enforced because the arbitrator acted consistent with his authority under the CBA in interpreting the terms of that agreement.

### B.

VSC responds that the arbitration award must be vacated because it did not draws its essence from the CBA. VSC asserts that the arbitrator's award is based on the erroneous conclusion that the drug policy was not implemented pursuant to the agreement of the parties. VSC argues that, since the award follows from a errant interpretation on the terms contained in the CBA, it can fairly be read as deriving its essence from the CBA.

### C.

■ The Court is satisfied that it is within the authority of the arbitrator to determine whether the CBA was modified to incorporate the terms of the drug policy promulgated by VSC for the salaried employees. It is not the province of the Court to second-guess the arbitrator's resolution of the attendant factual questions or to substitute its judgment for that of the arbitrator.

## V.

### A.

VSC moves for summary judgment vacating the arbitration award because it disregards the last chance agreement reached between VSC and Rowe. VSC asserts that the last chance agreement was a binding and independent agreement which was enforceable without regard to whether the drug policy was incorporated into the CBA. Plaintiffs respond that the arbitrator properly concluded that the last chance agreement was not incorporated into the CBA and, therefore, was properly disregarded.

### B.

#### 1.

■ As stated, the Court is satisfied that the arbitrator was within his authority to conclude that the last chance agreement was not made a part of the CBA. However, the enforceability of the last chance agreement was not dependent upon its inclusion within the terms of the CBA and, therefore, the arbitrator exceeded his authority in rendering an award that disregarded the independent force and effect of the agreement.

### 2.

In *Bakers Union Factory No. 326 v. ITT Continental Baking Company, Inc.*, 749 F.2d 350 (6th Cir.1984), an employee suspended for being intoxicated on the job was reinstated pursuant to a settlement agreement which required the employee to participate in an alcohol rehabilitation program and remain alcohol free. The settlement agreement provided that any failure to comply with its terms would result in the termination of employment. When the employer was informed that the employee had absented himself from the rehabilitation program, the employee was terminated. The termination was grieved and subsequently submitted to arbitration. The arbitrator found that the employee had violated the settlement agreement, but reasoned that termination was too harsh and awarded reinstatement on the condition that the employee be bound by a similar agreement. The district court concluded that the arbitrator had not exceeded his authority by disregarding the settlement agreement. The Court of Appeals for the Sixth Circuit reversed and vacated the award. The appellate court stated:

> That brings us to the central issue in this case: did the arbitrator have the authority to disregard the explicit terms of the prior settlement agreement reached by the parties? The district court held that the arbitrator properly ignored the settlement agreement because the parties did not contemplate that the settlement agreement would constitute an amendment or addendum to the collective bargaining agreement. Because the settlement agreement did not amend the collective bargaining agreement, the argument goes, the arbitrator retained his authority under the collective bargaining agreement to determine whether the penalty imposed by the employer under the settlement agreement was too harsh.

> We decline to endorse the formalistic approach adopted by the district court. In focusing on the question whether the settlement agreement constituted a formal amendment to the collective bargain-

ing agreement, the district court failed to adopt the rule of law that most effectively implemented the intent of the parties and the policy behind the Labor Management Relations Act, 29 U.S.C. § 185.

749 F.2d at 353. The Court of Appeals reasoned:

> When a party claims that a prior settlement agreement controls the parties' obligations, the policy in favor of the finality of arbitration must yield to the broader policy in favor of the parties' chosen method of non-judicial dispute resolution. When the former policy gives way to the latter, the rule restricting our scope of review—a rule designed to implement the former policy—necessarily loses its foundation.

*Id.* at 354.

### 3.

Insofar as this case turns on whether the last chance agreement controls to obligations of the parties, "the policy in favor of the finality of arbitration must yield to the broader policy in favor of the parties' chosen method of non-judicial dispute resolution." *Id.* The arbitrator recognized that the last chance agreement was a valid, enforceable method of resolving the dispute. The arbitrator's opinion stated, in relevant part:

> The arbitrator believes that last chance agreements are to be enforced. The policy is to encourage the parties to work out their differences, and to salvage employees, if that is possible. A reluctance by the arbitrator to enforce such agreements encourages the parties not to make them, resulting in more discharges, not less.

> Nevertheless, the arbitrator also holds that such agreements are to be scrupulously but narrowly enforced by their terms, and are binding only upon the signatories. For whatever reason, the Union was not made a party to this written agreement. To that extent, the Union did not expressly waive its right to

the enforcement of its written collective bargaining agreement.

\* \* \* \* \* \*

On the other hand, Mr. Rowe himself promised to be drug free, and subject to random drug tests for two years, as a condition of reinstatement. He violated the terms of that agreement, and brought about damages that were clearly avoidable.

Further, the Union knew of the discipline and reinstatement of Mr. Rowe, and chose not to file a grievance or protest. It cannot be permitted to totally disregard the consequences of its choices.

### 4.

■ The argument in support of enforcing the arbitration award must then follow a course of reasoning similar to that expressly rejected in *Bakers Union:* since the drug policy did not amend the collective bargaining agreement, the arbitrator retained the authority to determine whether there was just cause to terminate Rowe under the CBA, the last chance agreement consistent with the drug policy notwithstanding. The Court is satisfied that it is not within the scope of the arbitrator's authority to disregard a valid, enforceable agreement between the parties.

### 5.

■ Plaintiffs assert that the last chance agreement is not controlling because it was not signed by a representative of the Union and would distinguish *Bakers Union* on the same ground. Plaintiffs assert that this position accords with the finding of the arbitrator that the agreement is only binding upon its signatories and, therefore, the Union retains the right to enforce the CBA.

### C.

The Court is persuaded that the omission of an express endorsement of the last chance agreement by the Union is not dispositive in this case. There is no dispute that the last chance agreement is binding upon its signatories. Rowe, as a signatory, cannot avoid the consequences of violating the terms of the last chance agreement. Indeed, the arbitrator was constrained to observe:

In January, 1990, Grievant was discharged. Under the negotiated work rules, such a result was potentially sustainable. Mr. Rowe was "happy" to have his job back, when the employer offered a reinstatement subject to the conditions listed in the January 18 letter. He agreed to its terms.

It is also undisputed that: (1) Union representatives requested that Rowe be placed under VSC's drug policy rather be discharged on January 18, 1990; (2) the Union knew the terms of Rowe's reinstatement pursuant to the last chance agreement; and, (3) the Union chose not to grieve its terms. Declining to enforce the agreement because the Union did not sign an acknowledgement of the January 18, 1990 letter would raise form above substance and unjustifiably permit Rowe to avoid his obligations under a valid, enforceable settlement agreement.[2] To abrogate the last chance agreement by such device allows Rowe, by virtue of his membership in a collective bargaining unit, to take a second bite at the apple. This would be in direct contradiction of the overarching federal labor policy favoring binding non-judicial dispute resolution.

### VI.

For the reasons stated, defendant's motion is GRANTED and the arbitration

---

**2.** In awarding Rowe reinstatement *without* back pay, the arbitrator deviated from the result required by Rowe's violation of the last chance agreement (discharge) and from the result required by his conclusion that Rowe's discharge was without sufficient cause under the CBA (reinstatement with backpay). The award reveals a conclusion that Rowe had engaged in conduct prohibited under the CBA, while reflecting the arbitrator's belief that the consequence was too harsh. It is not the province of the arbitrator to fashion his own brand of industrial justice. *International Brotherhood of Fireman and Oilers, AFL–CIO, Local 935–B v. The Nestle Company,* 630 F.2d 474, 476 (6th Cir.1980).

award is VACATED.[3] Plaintiff's motion is DENIED.

SO ORDERED.

---

**3.** In light of this disposition, the Court does not reach defendant's assertion that enforcement of the award would be contrary to public policy.