16 F.3d 1223
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 VOSS STEEL EMPLOYEES UNION; Ronald Rowe, Plaintiffs-Appellants,
v.
VOSS STEEL CORPORATION, Defendant-Appellee.
 Nos. 92-2068, 92-2309.
 United States Court of Appeals, Sixth Circuit.
 Jan. 31, 1994.
 
 Before: JONES and KEITH, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellants Voss Steel Employees Union ("the Union") and Ronald Rowe ("Rowe") appeal from the district court's grant of summary judgment to Appellee Voss Steel Corporation ("VSC"), which ruling overturned the Arbitrator's Opinion and Award ("the Award") that had reinstated Rowe after his discharge by VSC. We AFFIRM the holding of the district court.
 
 
 2
 * A. The Accident and the Discharge
 
 
 3
 Arbitrator Stanley Dobry ("the Arbitrator") entered the Award in August 1991, ruling on Rowe's grievance of his discharge by VSC. This grievance was submitted to the Arbitrator by VSC and the Union pursuant to their Collective Bargaining Agreement ("the CBA"). The CBA provides in Section 1 of Article VII, entitled "Discharge or Suspension," that
 
 
 4
 [t]he employer shall not discharge or suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice ... except that no warning notice need be given to any employee before he is discharged if the cause of discharge is ... use of or being under the influence of marijuana or other hallucinatory or illegal drugs while on duty....
 
 
 5
 It further provides, in Section 2, Step 5 of Article VIII, entitled "Grievance Procedure," that
 
 
 6
 "[t]he arbitrator shall have the power to interpret and apply the Agreement. ... The arbitrator shall have no power to add to, subtract from, disregard or modify any of the terms of this Agreement. In cases involving discipline or discharge, the arbitrator shall decide if the Company's actions are supported by the preponderance of evidence. The decision of the arbitrator shall be final and binding upon the Company, the Union, and the grievant.
 
 
 7
 The CBA contains no definition of "just cause," but the Work Rules (instituted by VSC pursuant to Section 1 of Article XXV of the CBA, entitled "Management Rights") state that "working in a condition unfit to work because of being under the influence of" marijuana or other illegal drugs makes an employee "[s]ubject to [d]ischarge."
 
 
 8
 As the Arbitrator stated and the parties agree, the facts in this case are undisputed. VSC processes steel coils. Rowe, with fifteen years' seniority, was a forklift operator who transferred the steel coils from the outside storage yard to the plant for processing. He also operated the overhead gantry crane, transporting the coils within the yard itself. These coils range in weight from one to thirty tons.
 
 
 9
 On January 12, 1990, Rowe had an accident while operating the gantry crane, damaging one of its overhead supports. Company policy required that he be administered a drug test, to which Rowe consented. The results of the test, returned on January 18, 1990, to Jim Voss ("Voss"), President of VSC, were positive for both cocaine and marijuana in Rowe's bloodstream on the day of the accident. Voss met on January 18 with Rowe and his Union Representatives, including Rasik Patel, the Union President. According to the Arbitrator, "[t]he Union requested that Grievant [Rowe] be given an opportunity for rehabilitation, rather than being discharged; and placed under the Company's drug policy. The Company [VSC] agreed."
 
 
 10
 The meeting resulted in a "Last Chance Agreement"[1] between Rowe and VSC ("the LCA"), memorialized in a letter signed by Rowe, but not signed by the Union. VSC claims that the letter was signed at the meeting, in the presence of the Union representatives and with their full knowledge and approval, although the Arbitrator did not make such a finding. The LCA permitted VSC to conduct random drug tests on Rowe for a period of two years after his return to work, following a thirty day suspension. A positive drug test would result in Rowe's immediate dismissal.
 
 
 11
 On November 19, 1990, Rowe submitted to a drug test, pursuant to the LCA, though there was no reason to believe that he was under the influence of drugs at the time. Rowe tested positive for marijuana in his bloodstream and was discharged on November 27, 1990. The VSC expert, Dr. Fischer, testified before the Arbitrator that the test administered to Rowe could not establish whether a person is under the influence of marijuana at the time of the test.
 
 B. The Company Drug Policy
 
 12
 VSC and the Union were negotiating a new labor agreement during the fall of 1989. There were discussions of a drug policy to be implemented for Union members that would be similar to the policy relating to salaried employees, in place since July 1989. That policy was reflected in the basic contours of the LCA between Rowe and VSC: a thirty day suspension followed by rehabilitation, reinstatement and random drug testing for two years after reinstatement, with dismissal following any positive drug test. A tentative agreement was ratified by the Union in October 1989, but there was no final Union action on it, and it was never posted or distributed to the Union members. The Arbitrator found that the Union was concerned that "the drug policy provide relief from the contract which called for immediate discharge in cases of drug use."
 
 C. The Arbitrator's Decision
 
 13
 The issue submitted to the Arbitrator by VSC and the Union was whether "proper cause" had existed to discharge Rowe. Prior to addressing this issue, the Arbitrator ruled that there was no drug policy in place for Union members as of the date of Rowe's accident, January 12, 1990. The Arbitrator also held that although "last chance agreements are to be enforced," the Union here was not made a party to the LCA between Rowe and VSC. As such, "the Union did not expressly waive its right to the enforcement of its written collective bargaining agreement."
 
 
 14
 These two preliminary rulings led the Arbitrator to determine that Rowe had been discharged without just cause. Because no drug policy was in effect for Union members, VSC had no right to perform random drug testing under the CBA. Nor did it have the right to discharge Rowe for off-premises drug use, which the Arbitrator concluded to be the most serious offense that the November 1990 drug test could prove. The Arbitrator thus concluded that Rowe was entitled to be reinstated, but that because he had violated his own obligations under the LCA, he was not entitled to backpay for the period between his discharge and his reinstatement.
 
 D. The District Court's Decision
 
 15
 VSC refused to reinstate Rowe, leading to an action in federal district court to force VSC to do so. The district court granted summary judgment to VSC, thus overturning the Award. The court acknowledged the narrow scope of review permitted for arbitration awards. It did not quarrel with the Arbitrator's finding that the drug policy, and therefore also the LCA, had not been incorporated into the CBA. The court found this fact to be irrelevant, however, in reliance upon Bakers Union Factory # 326 v. ITT Continental Baking Co., Inc., 749 F.2d 350 (6th Cir.1984), wherein we overturned an arbitrator's award because it failed to abide by the terms of a last chance agreement between the employer, the union, and the grievant. In Bakers Union, all three parties signed the agreement, whereas here only Rowe and VSC signed it. The district court, however, held that this was "not dispositive in this case." It pointed to the undisputed facts that the Union: (1) requested that Rowe be allowed to participate in the LCA, pursuant to VSC's drug policy for salaried employees, (2) knew the terms of Rowe's reinstatement, and (3) failed to grieve those terms.
 
 II
 A. Standard and Scope of Review
 
 16
 "[W]e review a [district court's] grant of summary judgment in labor arbitration cases de novo.... Nevertheless, our scope of review is extremely limited. As the Supreme Court made clear in the Steelworkers Trilogy [three 1960 labor arbitration cases], ... when parties to a collective bargaining agreement provide for arbitration of grievances and disputes[,] they have bargained for an arbitrator's decision, not the decision of a court." Monroe Auto Equip. Co. v. International Union, UAW, Monroe Auto Equip. Co., Unit of Local 878, 981 F.2d 261, 265 (6th Cir.1992) (citation and footnote omitted). Moreover, when the facts are undisputed and adopted by both parties, "[o]ne of the parties is ... entitled to judgment as a matter of law." Eberhard Foods, Inc. v. Handy, 868 F.2d 890, 891 (6th Cir.1989). The Supreme Court has expounded at length upon the narrow scope of review for arbitration awards:
 
 
 17
 "Courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.... [A]n arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but ... a court should not reject an award on the ground that the arbitrator misread the contract.... [T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."
 
 
 18
 Monroe, 981 F.2d at 266 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987)).
 
 
 19
 Although the scope of review is narrow, courts must not allow an arbitrator to blatantly ignore a collective bargaining agreement, thus dispensing his "own notions of industrial justice." An arbitration award must "derive its essence" from the agreement, and it fails to do so
 
 
 20
 when (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on "general considerations of fairness or equity" instead of the exact terms of the agreement.
 
 
 21
 Dallas & Mavis Forwarding Co., Inc. v. General Drivers, Warehousemen & Helpers, Local Union No. 89, 972 F.2d 129, 134 (6th Cir.1992), cert. denied, 113 S.Ct. 973 (1993). Further broadening the otherwise narrow review of an arbitration award, we have held that "if an examination of the record before the arbitrator reveals no support whatever for his determinations, his award must be vacated." Detroit Coil Co. v. International Ass'n of Machinists & Aerospace Workers, Lodge # 82, 594 F.2d 575, 581 (6th Cir.1979) (internal quotation marks omitted). Finally, although "an award may not be vacated merely because the arbitrator made an error of law," it may be vacated "if the arbitrator's decision evidences a manifest disregard for the law." Tanoma Mining Co., Inc. v. Local Union No. 1269, UMWA, 896 F.2d 745, 749 (3rd Cir.1990) (internal quotation marks omitted).
 
 
 22
 B. The Last Chance Agreement and the Rule of Bakers Union
 
 
 23
 The district court held that Bakers Union controls the outcome here. In Bakers Union, we ruled that
 
 
 24
 [p]arties who reach a settlement pursuant to a formal grievance procedure have not bargained for an arbitrator's construction of the collective bargaining agreement: they have bargained for their own construction.
 
 
 25
 When a party claims that a prior settlement agreement controls the parties' obligations, the policy in favor of the finality of arbitration must yield to the broader policy in favor of the parties' chosen method of non-judicial dispute resolution. When the former policy gives way to the latter, the rule restricting our scope of review--a rule designed to implement the former policy--necessarily loses its foundation.
 
 
 26
 749 F.2d at 354 (emphasis added). Appellants argue that Bakers Union is factually distinct from the instant case because here only Rowe and VSC signed the LCA. The district court relied, however, upon the Union's role in structuring the terms of the LCA and upon its apparent acquiescence to those terms as a basis for holding that the Union was in effect "estopped" from denying that it was bound by the LCA.
 
 
 27
 We recently upheld the viability of Bakers Union in Ohio Edison Co. v. Ohio Edison Joint Council, 947 F.2d 786 (6th Cir.1991). The facts of Ohio Edison are strikingly similar to those of Bakers Union and of the instant case, with one notable exception. In all three cases, the grieving employee, in concert with a union representative, had proposed entering into a last chance agreement with the employer, authorizing random drug testing during a probationary period and requiring summary discharge upon a test showing positive for the presence of illegal drugs in the employee's bloodstream.
 
 
 28
 The only significant factual difference among these three cases is the way in which the union in each case was made a party to the agreement. In Bakers Union and in Ohio Edison, both the employee and a union representative signed the last chance agreement. In Ohio Edison, the agreement contained a provision stating that "[b]y your signature below, you and your Union Representative agree to these conditions and they become so effective." Ohio Edison Co. v. Ohio Edison Joint Council, 771 F.Supp. 1476, 1479 (N.D.Ohio 1990). Here, the only indication that the Union was a party to the LCA was given by its course of conduct. The Arbitrator held that this conduct, without a signature from a union representative acknowledging the LCA, did not in fact bind the Union to that agreement.
 
 III
 
 29
 We cannot agree with the Arbitrator. Our holding in Bakers Union did not hinge upon whether or not a union representative had signed the last chance agreement. Nor does the absence of such a signature on the LCA at issue here nullify its binding effect upon the parties. Here, it is not contended that the Union was unaware of the terms of the LCA, nor is it contended that the Union opposed Rowe's signing it. Because the Arbitrator's Award clearly disregarded the rule of law established in Bakers Union, we AFFIRM the decision of the district court vacating that Award.
 
 
 
 [1]
 Such an agreement is typically drawn among the employer, the union representing the collective bargaining unit of which the employee is a part, and the employee who has violated a work rule, thus subjecting himself to discipline (often immediate termination). The employee is given "one last chance" to correct his errant behavior, in exchange for which he agrees to certain conditions. In drug use cases, these conditions often involve the employee's consent to random drug testing. Almost always, as here, failure to live up to the agreement is grounds for immediate dismissal, without the opportunity to file a grievance protesting the employer's action