NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0314n.06
Case No. 18-3340

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

TECNOCAP LLC,

    *Plaintiff-Appellee*,

    v.

GRAPHIC COMMUNICATIONS
CONFERENCE/INTERNATIONAL
BROTHERHOOD OF TEAMSTERS
LOCAL 24M,

    *Defendant-Appellant*.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jun 20, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

---

Before: BATCHELDER, SUTTON, and WHITE, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. This appeal stems from a labor dispute in which an employer/company, Tecnocap LLC, and a labor union, Graphic Communications Conference/International Brotherhood of Teamsters Local 24M (hereinafter "the Union"), are parties to a collective bargaining agreement ("CBA"). In this appeal, the Union, on behalf of aggrieved employee Randy Witherow, challenges the district court's decision to vacate an arbitration award that had reinstated Witherow's employment with back pay. We AFFIRM.

The CBA includes a no-fault, point-based attendance (absenteeism) policy that provides for the dismissal of an employee upon the accumulation of 12 points. When Witherow reached his 13th point in September 2015, Tecnocap fired him pursuant to the policy, which led the Union to file a grievance, which led to a negotiated last chance agreement ("LCA") that said:

> Randy Witherow and Tecnocap LLC agree to the following:
>
> Instead of immediately terminating employment, Randy [Witherow] will be put on an eight (8) month probationary period for attendance issues. He will not miss any work during this eight month period unless it is approved prior by his supervisor or

if it is an excused absence approved by the Plant Manager and Director of Human Resources.

The employee [Witherow] understands that this agreement is his last chance to remain employed at Tecnocap LLC. Failure to make improvement or recurrence of inappropriate behavior or conduct within the specified time period as described in the October 8, 2015 warning will result in immediate termination.

The employee [Witherow] agrees to comply with all company policies, practices and procedures and understands that this agreement in no way prevents the employer from taking disciplinary action, including termination, for violations.

Please note that free days must be scheduled in advance. No call off for free days.

All three participants (Tecnocap's Plant Manager, the Union's Representative, and Witherow) signed the LCA, which—on its face—clearly and unambiguously gave Tecnocap the authority to fire Witherow for any unapproved absence during the next eight months.

Approximately five months later, on March 8, 2016, Witherow was absent from work when his car broke down, which caused a passenger co-worker to miss work as well. This absence was neither pre-approved nor excused. Under its policy, Tecnocap did not excuse absences due to car trouble—it consistently issued points to employees who were absent or late because of car trouble, including to the co-worker/passenger who was absent with Witherow.

Tecnocap fired Witherow and the Union filed a grievance alleging "unfair treatment." An arbitrator ruled for Witherow (and the Union), relying on provisions of the CBA to conclude that Tecnocap failed to show "just cause" for dismissing Witherow (opining that Tecnocap "appear[ed] to be applying its Policy in a punitive fashion") and ordered Tecnocap to reinstate Witherow's employment with back pay. Tecnocap sued in federal court, moving to vacate the arbitration award; the Union reciprocated with a motion to enforce the arbitration award.

The district court accepted as undisputed that "Witherow breached the LCA by failing to show up to work on March 8, 2016 without prior approval for an excused absence," and held, based on Sixth Circuit precedent, that "the LCA is controlling over the CBA," such that "an arbitrator must apply the LCA in reaching his decision" and "lacks the authority to set aside the

2

LCA"—which the arbitrator did here. *Tecnocap, LLC v. Graphic Commc'ns Conference/Int'l Bhd. of Teamsters, Local 24M*, No. 4:16-cv-2923, 2018 WL 1487173, at *4-5 (N.D. Ohio Mar. 27, 2018) (footnote omitted). In vacating the arbitration award, the district court elaborated:

> In the matter at bar, [the] [a]rbitrator failed to apply the clear language of the LCA[] and ruled in favor of [the] Union because he believed that [Tecnocap] appear[ed] to be applying its Policy in a punitive fashion. This exceeds a labor arbitrator's authority. LCAs are often executed to encourage settlements without the aid of an arbitrator. If an arbitrator were not bound to enforce the parties' previously agreed upon LCA, the entire system would be undermined.
>
> In this case, the parties chose to enter into the LCA, just like in [two Sixth Circuit cases]. Even after [a] close reading of the arbitration decision, one is left wondering how [Tecnocap] applied its policy to discharge Witherow in a punitive fashion. [The] [a]rbitrator seemed to rely solely upon the fact that [Tecnocap] immediately decided to terminate Witherow as soon as [it] learned he was absent from work on March 8, 2016[,] without first conducting any investigation. The [a]rbitrator g[ave] no substantive reasons why this fact allows for the LCA to be set aside.

*Id*. at *4 (citations, quotation marks, editorial marks, footnote omitted; paragraph break added).

The Union appealed, claiming that the controlling question was whether Tecnocap had "just cause" to fire Witherow and that the district court erred by holding that the LCA "vitiated" the CBA's just-cause provision.[1] But in *Bakers Union Factory No. 326 v. ITT Continental Baking Company*, 749 F.2d 350, 354-55 (6th Cir. 1984), we held exactly that: we upheld a company's dismissal of an employee for violating his LCA, over the union's resort to the CBA, by explaining that "parties who reach a settlement [i.e., LCA] pursuant to the terms of a collective bargaining agreement do not intend that an arbitrator may amend the terms of the [LCA] settlement" and, therefore, "an arbitrator to whom the dispute is submitted is bound by the terms of that [LCA]." Similarly, in *Ohio Edison Company v. Ohio Edison Joint Council*, 947 F.2d 786, 787 (6th Cir. 1991), we considered an LCA in which the union had negotiated an employee's continued employment, coupled with participation in a treatment program, but provided for dismissal if he

---

[1] The Union also made vague claims that the district court improperly substituted its findings of fact and conclusions of law for that of the arbitrator, but did not identify any such facts, as found by the district court, or any legal conclusions that contradicted the arbitrator's. We therefore disregard this claim.

failed to attend treatment. When the arbitrator disregarded the LCA and reinstated the employee despite the breach of the LCA, "because he viewed the discharge as 'unreasonably harsh,'" we reiterated our *Bakers Union* holding that "last chance agreements are binding in arbitration," and we vacated the arbitration award for failure to adhere to the LCA. *Id.* Thus, pursuant to our precedent, an LCA can supersede a CBA's just-cause provision.

More to the point, however, is that an LCA is an agreed-upon predetermination of "just cause." It is a concession by the employee (and the union) that the employer already had "just cause" to discipline the employee, who is thereafter on the grace of one "last chance" in exchange for a promise of compliance, the violation of which all three agree will be "just cause" for immediate discipline. *See Voss Steel Employees Union v. Voss Steel Corp.*, 16 F.3d 1223 (6th Cir. 1994) (Table) ("Such an agreement is typically drawn among the employer, the union . . . , and the employee who has violated a work rule, thus subjecting himself to discipline (often immediate termination). The employee is given 'one last chance' to correct his errant behavior, in exchange for which he agrees to certain conditions[,] . . . [the] failure to live up to [which] is [almost always] grounds for immediate dismissal, without the opportunity to file a grievance. . . ."). By signing the LCA in this case, both Witherow and the Union agreed that if Witherow had an unexcused absence in the next eight months, Tecnocap would have "just cause" to fire him.

The Union's attorney cites several cases that do not have an LCA; argues that *Bakers Union* is distinguishable because the arbitrator in *Bakers Union* had found that that employee had violated the LCA whereas, here, the arbitrator disregarded the LCA; and even claims that Tecnocap did not fire Witherow for his being absent "but rather for not providing sufficient information regarding his car breakdown." After careful review, we find these arguments unpersuasive and, frankly, bordering on frivolous.

For all of the foregoing reasons, we AFFIRM the judgment of the district court.

4

SUTTON, Circuit Judge, concurring. I join Judge Batchelder's opinion in full. I write only to note that neither party raised the question whether *Bakers Union Factory No. 326 v. ITT Continental Baking Co.*, 749 F.2d 350 (6th Cir. 1984), is compatible with *Michigan Family Resources, Inc. v. Service Employees International Union Local 517M*, 475 F.3d 746 (6th Cir. 2007) (en banc).

HELENE N. WHITE, Circuit Judge, dissenting. Judicial review of a labor arbitrator's decision is extremely limited. So long as "an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (citation and internal quotation marks omitted). Because the arbitrator here arguably construed or applied the last chance agreement (LCA) and the collective bargaining agreement (CBA), I would reverse the district court and remand with instructions to enforce the arbitrator's award.

"Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *United Paperworkers Int'l Union, ALF-CIO v. Misco, Inc.*, 484 U.S. 29, 37–38 (1987). In *Michigan Family Resources, Inc. v. Service Employees International Union Local 517M*, we held that, consistent with *Garvey* and *Misco*, judicial review of arbitration awards is limited to determining whether a "procedural aberration" occurred within the arbitration process, and courts should not focus on matters of substantive interpretation. 475 F.3d 746, 753 (6th Cir. 2007) (en banc). "[T]he request for judicial intervention should be resisted" unless any of the following questions are answered in the affirmative:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"?

*Id.*

Here, because the parties jointly submitted the matter to arbitration and there is no allegation that the arbitrator committed fraud, had a conflict of interest, or otherwise acted

6

dishonestly, the only question is whether the arbitrator was "arguably construing or applying the contract." *Id.*

The arbitrator's decision "has all the hallmarks of interpretation." *Id.* at 754. The opinion establishes the factual background for the dispute, analyzes and quotes from the relevant provisions of the CBA, and concludes that the LCA does not displace the just-cause provisions in the CBA. Regarding the LCA, the arbitrator explained:

> [T]he Company considers the last chance agreement to be self-executing and interprets its absentee policy as providing an absolute right to discharge based on employees who accumulate a specific number of points, notwithstanding the reasons for the absences . . . . [However, n]o policy can vitiate the right of the Union to challenge whether the cause asserted for discharge is just under the CBA.

(R. 1-24, PID 141.) Although the majority asserts that the arbitrator "disregarded the LCA," this is not so. Rather, the arbitrator simply concluded that the LCA augmented the CBA, but did not supplant it.

The LCA is, in fact, silent regarding how it interacts with the CBA. The LCA does not affirmatively state that the CBA's just-cause standard for termination no longer applies, and it does not suggest that the arbitrator lacks authority to determine whether a violation of the LCA occurred within the context of the CBA's just-cause standard. Indeed, the proceedings below suggest that the parties shared the assumption that the arbitrator had such authority. The question submitted for arbitration was, "Was the Grievant discharged for just cause? If not, what shall be the remedy?"[1] (R. 1-24, PID 138.) The parties do not appear to otherwise dispute that Witherow's termination was arbitrable, or that the arbitrator possessed authority to consider and make an award concerning the matter. This all suggests that the parties were in agreement that the arbitrator had

---

[1] The union noted that the employer offered no counter-proposal for the question to be submitted to the arbitrator.

the authority to interpret the CBA and the LCA together, and render a decision on the question of just-cause termination in the context of the LCA.

Contrary to the majority, I do not read *Bakers Union Factory #326 v. ITT Cont'l Baking Co.*, 749 F.2d 350 (6th Cir. 1984), as excepting LCAs from the extremely limited scope of judicial review applicable to labor-arbitration cases. Although we have stated that "normally last chance agreements are binding in arbitration," *Ohio Edison Co. v. Ohio Edison Joint Council*, 947 F.2d 786, 787 (6th Cir. 1991), this simply reflects the general rule that an LCA supplements the CBA, and unambiguous terms in the LCA must be given effect. Even the *Bakers Union* court recognized that an arbitrator's decision draws its essence from the collective bargaining agreement. *See Bakers Union*, 749 F.2d at 353. Where, as here, the parties contemplate that discipline imposed under the LCA will be subject to grievance and arbitration, the arbitrator is obliged to treat the LCA as part of the contract. Although the LCA may be the most relevant document in deciding the ultimate question of just cause, the arbitrator was nevertheless within his authority in deciding that the LCA did not eliminate the just-cause requirement entirely.

The majority's broad interpretation of *Bakers Union* conflicts with the foundational principle that every employment dispute arises in a unique environment—"a common law of the shop which implements and furnishes the context of the agreement." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 580 (1960) (citation omitted). "The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *Id*. at 581–82. In other words, a labor arbitrator tailors the resolution of each dispute to the CBA as given expression by the parties through their past practice and the standards of the industry. As the arbitrator noted, even if a CBA's attendance policy expressly provides for termination when an employee reaches a certain number of points,

the arbitrator still has authority to review a termination and determine if it was appropriate given the controlling contracts and the facts of the grievance. The arbitrator, in essence, determined that the circumstances of Witherow's absence together with the employer's handling of the discipline suggested that the employer acted punitively, and not based on a violation of the LCA. This is the type of decision that labor arbitrators render on a regular basis, and to which courts are obliged to defer.

The arbitrator did not disregard the LCA. Rather, he applied the LCA based on a reasonable understanding of the testimony, LCA, CBA, and the labor environment in which the dispute arose. The district court should have enforced the award.

For these reasons, I dissent.