RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0062p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

TEAMSTERS LOCAL UNION 480,

*Plaintiff-Appellant,*

*v.*

No. 12-6253

UNITED PARCEL SERVICE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville
No. 3:12-cv-00178—Aleta Arthur Trauger, District Judge.

Argued: October 9, 2013

Decided and Filed: April 4, 2014

Before: BOGGS, CLAY, and GILMAN, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Lesley Cook, GODWIN, MORRIS, LAURENZI & BLOOMFIELD, P.C., Memphis, Tennessee, for Appellant. Waverly D. Crenshaw, Jr., WALLER, LANSDEN, DORTCH & DAVIS, LLP, Nashville, Tennessee, for Appellee. **ON BRIEF:** Lesley Cook, Samuel Morris, GODWIN, MORRIS, LAURENZI & BLOOMFIELD, P.C., Memphis, Tennessee, for Appellant. Waverly D. Crenshaw, Jr., WALLER, LANSDEN, DORTCH & DAVIS, LLP, Nashville, Tennessee, for Appellee.

BOGGS, J., delivered the opinion of the court, in which GILMAN, J., joined. CLAY, J. (pp. 15–20), delivered a separate dissenting opinion.

1

_____

**OPINION**

_____

BOGGS, Circuit Judge.  Teamsters Local Union 480 ("Union") sought a declaratory judgment in federal district court to enforce a settlement agreement with United Parcel Service, Inc. ("UPS").  The Union and UPS had formed the agreement in June 2010 to resolve a labor dispute between them.  According to the Union, UPS did not comply with the agreement.  UPS maintained that any complaint about UPS's failure to abide by the agreement fell within a broad arbitration clause in the parties' collective-bargaining agreement ("CBA") and was thus subject to arbitration.  The district court agreed and dismissed the Union's complaint for lack of subject-matter jurisdiction.  Although we conclude that the district court had subject-matter jurisdiction, for the reasons given below, we affirm the district court's dismissal of the Union's complaint, based on the language of the CBA.

**I**

UPS is an international package-delivery company that provides transportation, logistics, and financial services.  The Union is the certified bargaining representative for certain UPS employees.  The parties do not dispute these facts.  UPS employs a class of workers known as "shifters," who drive semi-tractor trailers at a UPS facility as part of the loading-dock operation. Appellee's Br. 7.

The Union and UPS are parties to a CBA consisting of two documents: (1) the National Master United Parcel Service Agreement ("Master Agreement"), effective from December 19, 2007 through July 31, 2013; and (2) the Teamsters Southern Region and United Parcel Service Supplemental Agreement to the National Master United Parcel Service Agreement ("Supplemental Agreement"), effective from the date of ratification through July 31, 2013.

The CBA provides elaborate grievance procedures that the Union and UPS must invoke to resolve disputes between them.  Under article 7 of the Master Agreement, "[a]uthorized representatives of the Union may file grievances alleging violations of this Agreement, under

local grievance procedures, or as provided herein." Article 8, addressing "National Grievance Procedure," provides, in pertinent part:

> All grievances and/or questions of interpretation arising under the provisions of this National Master Agreement shall be resolved [in accordance with the following provisions].

> . . .

> All grievances and/or questions arising under the provisions of this National Master Agreement shall be submitted to the grievance procedure for determination.

> . . .

> The Union and Employer may under [Section 3] review and reverse, if necessary, decisions by any area, regional or local grievance committee which interprets Master language erroneously.

> . . .

> The decision of the National Grievance Committee shall be final and binding. The National Grievance Committee shall determine whether a decision submitted to it raises an issue of interpretation of Master Agreement language.

> . . .

> Where the National Grievance Committee fails to reach a majority decision as to any case submitted pursuant to this Article (excepting arbitrator decisions) either party shall have the right to refer the case to binding arbitration.

> . . .

> Any grievance that does not raise an issue of interpretation of a Master Agreement Article or Section shall be resolved pursuant to the provisions relating

to the local, state and area grievance procedures set forth in the applicable Supplements, Riders and Addenda.

. . .

The arbitrator shall have the authority to apply the provisions of this Agreement and to render a decision on any grievance coming before him/her . . . Any grievance that does not raise an issue of interpretation of a Master Agreement Article or Section shall be resolved pursuant to the provisions relating to the local, state and area grievance procedures set forth in the applicable Supplements, Riders and Addenda.

The Supplemental Agreement—which contains key language for this case—further details the grievance procedures the parties must follow for dispute resolution. Article 51, titled "Grievance," provides, in pertinent part:

**SECTION 1**

. . .

A grievance is hereby jointly defined to be any controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of any of the provisions of this Agreement.

. . .

In the event of any grievance, complaint, or dispute it shall be handled in the following manner:

1.  The employee shall report it to the employee's shop steward in writing within five (5) working days. The steward shall attempt to adjust the matter with the supervisor within forty-eight (48) hours.

2.  Failing to agree, the shop steward shall promptly report the matter to the Union, which shall submit it in writing and attempt to adjust the same with the Employer within fifteen (15) days.

3.  If the parties fail to reach a decision or agree upon a settlement in the matter in any Local Union area, it shall be submitted within fifteen (15) days to the Southern Region Area Parcel Grievance Committee.

. . .

**SECTION 2 – GRIEVANCE COMMITTEE – S.R.A.P.G.C.**

. . .

The decision of the majority of the panel hearing the case shall be binding on all parties.  Decisions reached at each step of the grievance procedure including the Supervisor-Steward level shall be final and binding.

. . .

**SECTION 3**

If any grievance or dispute cannot be satisfactorily settled by a majority decision of the panel of the S.R.A.P.G.C. . . . then the grievance shall be submitted to an arbitrator through the Federal Mediation and Conciliation Service by either or both parties within five (5) days.

. . .

The decision of the arbitrator shall be final and binding on the parties and employees involved.  In the event that the losing party fails to abide by the arbitrator's decision, or that either party refuses to submit to the arbitrator's jurisdiction, the other party shall have the right to [use] all legal or economic recourse.

At some time prior to June 2010, the Union filed numerous grievances concerning UPS's methods for assigning work opportunities to shifters.  The parties resolved some of these grievances through discussion and negotiation, and they memorialized their understanding in a settlement agreement, dated June 16, 2010 ("Settlement Agreement").  *Id.*  UPS agreed to alter its methods for assigning work opportunities to shifters.  In exchange, the Union agreed to

withdraw certain grievances with prejudice—apparently the referenced grievances were at step 1 of the grievance process. The Union alleges that UPS has not abided by the terms of the Settlement Agreement. That is, the Union alleges that UPS has not assigned work opportunities to shifters in the manner agreed upon.

On February 9, 2012, the Union filed suit in district court, seeking a declaration, under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, ordering UPS to abide by the Settlement Agreement. The district court granted UPS's motion to dismiss the complaint for lack of subject-matter jurisdiction. The Union appealed. We now affirm the dismissal of the Union's complaint.

## II

We review de novo a district court's dismissal of a complaint for lack of subject-matter jurisdiction. *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012). We also review de novo a district court's conclusion about the arbitrability of a dispute. *Simon v. Pfizer, Inc.* 398 F.3d 765, 772 (6th Cir. 2005).

## III

### A

As an initial matter, the parties dispute whether the district court properly exercised subject-matter jurisdiction over the Union's suit. In its complaint, the Union asserts jurisdiction under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. In its appellate brief, the Union instead contends that the district court's sole basis of jurisdiction was the federal-question statute, 28 U.S.C. § 1331. UPS, though master of its motion, styles its motion as a motion to dismiss pursuant to both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and not as a motion to compel arbitration. But in its accompanying memorandum, UPS only fleetingly references jurisdiction and instead argues that dismissal is proper because the parties' dispute must be resolved in accordance with the CBA's grievance procedures. Because a failure to pursue arbitration means that the Union has failed to state a claim under the CBA and the Settlement Agreement, UPS's motion is more properly construed as a motion to dismiss under Rule 12(b)(6).

The district court, for its part, dismissed the Union's complaint on the ground that the court lacked subject-matter jurisdiction. But it, too, devotes only a few sentences to discussing jurisdiction.

Although the parties have not thoroughly briefed whether the district court exercised jurisdiction under 29 U.S.C. § 185, we conclude that it did. The LMRA gives federal courts subject-matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees." § 185(a). Here, the parties' dispute centers on the interpretation of contracts between an employer and a labor organization. Specifically, the parties dispute whether the CBA and the Settlement Agreement require the Union to submit an alleged breach of the Settlement Agreement to the CBA's internal grievance procedures. The parties do not dispute that they are bound by the contracts between them; they simply dispute the meaning of the contracts' terms. Therefore, the LMRA provides jurisdiction.

Subject-matter jurisdiction is not a merits question. "It refers to a tribunal's power to a hear a case." *Morrison v. Nat'l Austl. Bank Ltd.*, 120 S. Ct. 2869, 2877 (2010) (internal quotation marks omitted). Subject-matter jurisdiction "presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief." *Id.* In this lawsuit, UPS argues that the Union is prohibited from filing suit in this court because the Union has not exhausted the internal grievance process under the CBA. This is a 12(b)(6) claim. Accordingly, we construe the UPS's motion as one under 12(b)(6). *See id.* (considering arguments erroneously labeled as a Rule 12(b)(1) issue under Rule 12(b)(6)). Here, the district court had jurisdiction under 29 U.S.C. § 185 to adjudicate the question whether the Union's factual allegations entitle it to relief.

**B**

The central dispute between the parties is whether the disagreement over UPS's alleged noncompliance with the Settlement Agreement is subject to the CBA's grievance procedures[1] or whether the Union may seek immediate relief in federal court. "The first task of a court asked to

---

[1]The CBA contains elaborate procedures for resolving grievances. For convenience, we use "arbitration" and "arbitrability" as shorthand for "dispute resolution in accordance with the CBA's grievance procedures." Formal arbitration, however, is proper under the CBA only when the parties have exhausted the other procedures in steps 1–3, under Article 51 of the Supplemental Agreement.

[resolve arbitrability] of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). "[A]rbitration is a matter of contract[,] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks omitted). The parties make much of federal labor and arbitration policy, but the common principle "is at bottom a policy guaranteeing the enforcement of private contractual arrangements." Hence, the initial question is whether UPS and the Union intended to arbitrate the present dispute.

UPS argues, based on the language of the CBA, that the parties intended a disagreement over one party's compliance with the Settlement Agreement to be resolved through the internal grievance procedures. The Union responds that the Settlement Agreement is as final and binding as an arbitration award and is thus entitled to judicial enforcement. The best evidence of the parties' intent is their mutually agreed-upon language, contained in their contracts.

UPS rightly emphasizes that the CBA contains expansive language in favor of resolving grievances through non-judicial means. The CBA "jointly define[s]" a grievance as "*any* controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of any of the provisions of this Agreement." Further, "*any* grievance, complaint, or dispute [] *shall* be handled" using the agreed grievance procedures. First, aggrieved employees must complain to their "shop steward," who must attempt to resolve the matter with a supervisor. If that fails, the steward must report the issue to the Union for it to seek resolution with UPS. And if that fails, the parties must submit the complaint to a regional grievance committee. A "decision" reached "at each step of the grievance procedure" is "final and binding." And if the regional grievance committee cannot "satisfactorily" settle the issue, the parties must submit the issue to arbitration. The arbitrator's decision also becomes "final and binding" on the parties.

It is only at the conclusion of this process that a party may sue in court to resolve a grievance. Following arbitration, the prevailing party may invoke legal recourse to enforce the arbitral decision against the losing party. A party that refuses to submit properly to arbitration may also be brought to court.

The Union readily admits that the CBA provides a substantial dispute-resolution system—yet it seeks to bypass that system in this case. The Union concedes that "[t]he parties to the CBA have agreed to a complex and structured system of dispute resolution, of which arbitration is only one part." Appellant's Br. 9. The Union further acknowledges that "[t]he language of the CBA is clear, express, and strongly supports the settlement of grievances at all stages of the process." *Id.* We agree.

There remains the further question of whether the dispute over UPS's alleged breach of the Settlement Agreement is one "arising as to interpretation, application or observance" of the CBA. Although it appears that the Settlement Agreement—concerning the rights and obligations of the parties regarding shifters—does involve observance, application, and interpretation of the CBA, we need not resolve this question because both parties agree that it does. UPS argues that deciding whether it breached the Settlement Agreement would require analyzing how the parties define and understand terms like "extra/coverage work opportunities" and "out of classification work." *See* Appellee's Br. 16. This, UPS argues, requires interpreting the CBA.[2] The Union, for its part, asserts that "UPS's breach of the Settlement Agreement constitutes a violation of the arbitration provisions of the CBA." Both parties agree that the dispute about the Settlement Agreement entails interpreting and applying the CBA.[3] Therefore, the dispute is a "grievance" under the CBA and "shall be handled" using the CBA's grievance procedures.

Our dissenting colleague disputes the foregoing reasoning. He contends that the "Union's passing statement that UPS's breach of the Settlement Agreement constitutes a violation of the arbitration provisions of the CBA is *not* a concession that the dispute concerns interpretation, application, or observance of [the CBA]." Dissenting Op. at 16 (alteration in

---

[2]The Settlement Agreement does not expressly reference the CBA. But this is not dispositive in determining whether the current dispute over the arbitrability of the alleged Settlement breach concerns "interpretation, application, or observance" of the CBA.

[3]The district court correctly reasoned that a dispute concerning the arbitrability of a disagreement about a breach of a settlement agreement can amount to an interpretation or application of the CBA. The district court sensibly concluded that the "Union's claim that UPS breached the June 2010 Settlement Agreement plainly constitutes" a dispute "arising as to interpretation, application, or observance of the CBA." *Teamsters Local Union 480 v .United Parcel Service, Inc.*, No. 3:12-cv-00178, 2012 WL 4049980, at *6 & n.11 (M.D. Tenn. Sept. 13, 2012).

original) (emphasis in original) (internal quotation marks omitted). But this argument is without consequence because this court's opinion in *Jones v. General Motors Corp.*, 939 F.2d 380, 383 (6th Cir. 1991), forecloses any argument to the contrary. *Jones* held that the construction of a settlement agreement in fact "require[s] an interpretation of the terms of [the] CBA" because it concerns "employment relationships which are subject to a collective bargaining agreement." *Id.* (internal quotation marks omitted). We thus arrive at the same conclusion regardless of whether or not the Union has conceded this point.

## C

The parties are correct that we act against the backdrop of a federal policy supporting a presumption of arbitrability in the labor-law context. The presumption in favor of arbitration applies with particular force in labor disputes between an employer and a union. The text of the Labor Management Relations Act provides that "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d).

Congressional policy favors the "private settlement of disputes" under collective-bargaining agreements. *Int'l Union, United Auto., Aerospace & Agr Implement Workers of Am. (UAW), AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 702 (1966). This policy "in favor of settlement of disputes by the parties through the machinery of arbitration" is long-recognized. *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT &T Techs.*, 475 U.S. at 650. Furthermore, any "[d]oubts should be resolved in favor of coverage." *Id.*

The presumption in favor of contractually agreed-upon alternative dispute resolution extends to a range of questions that may arise about a contract. Even "attacks on the validity of the contract" must "be resolved by the arbitrator in the first instance."[4] *Nitro-Lift Techs., L.L.C.*

---

[4]The Supreme Court generally uses "validity" as a term of art to refer only to questions of the applicability of contractual defenses. *See, e.g.*, *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2778 n.2 (2010) (explaining

*v. Howard*, 133 S. Ct. 500, 503 (2012); *see United Steelworkers of Am. v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 420 (6th Cir. 2007) (en banc) ("If doubt exists over whether a dispute [concerning procedural requirements for arbitrating a case] falls on one side or the other of this line, the presumption in favor of arbitrability makes the question one for the arbitrator.").

The mere presence of an arbitration clause in a contract does not remove all questions about the contract from the judicial ken. For example, questions about "contract formation"— whether the parties ever agreed to the contract in the first place—are "generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2856–57 (2010). The Court has been clear that "[t]o satisfy itself that [an] agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have a court enforce." *Id.* at 2856. In this case, however, not only do the parties not contest either the proper formation or the validity of the CBA, the Union affirmatively maintains that UPS's alleged breach of the Settlement Agreement "constitutes a violation of the arbitration provisions of the CBA."

**D**

The Union argues that the Settlement Agreement is judicially enforceable because it enjoys "final and binding" status under the CBA. According to the Union, "[i]n this CBA, the language is clear" that "a settlement at any step of the procedure [is] final and binding." Appellant's Br. 11. But the Union points to no specific clause in the CBA that makes this "clear." What Article 51 of the Supplemental Agreement does state, however, is that "*[d]ecisions* reached at each step of the grievance procedure . . . shall be finding and binding." (emphasis added). Because the Settlement Agreement was not a decision reached at *any* step of the grievance procedure, it is not final and binding under this clause of the CBA.

We are unable to conclude that the Settlement Agreement here is an outcome of the grievance process. The Union does not allege otherwise, and we cannot presume facts not in the Union's complaint. Nor can we say that the Agreement is a "[d]ecision" reached at a step of the

that "[t]he issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded.'")

grievance procedure.  The CBA itself, at Article 51 of the Supplemental Agreement, uses the terms "settlement" and "decision" differently.  (Section 1 of Article 51, in describing the third step of the grievance process, says: "If the parties fail to reach a decision *or* agree upon a settlement . . . .").

It is true enough that settlements entered into at different phases of a grievance process may be judicially enforceable, if the CBA or the settlement agreement so provides.  An agreement "arrived at by virtue of a grievance process established by a collective bargaining agreement" may be a "creature[] wholly begotten by the CBA." *Jones*, 939 F.2d at 382–83.  But, as explained, the record does not show that this Settlement Agreement was entered into through the formal grievance process.

There is no oddity in finding that that the Settlement Agreement, which is not a decision reached at any step of the grievance process, is nonetheless covered by the CBA's arbitration clause.  To conclude otherwise is to blur the questions.  Whether the Settlement Agreement falls within the arbitration clause simply does not turn on whether it was a decision reached through the grievance process.  Rather, whether the Agreement falls within the arbitration clause turns chiefly on whether the present dispute "arise[s] as to interpretation, application or observance" of the CBA provisions.

The Union cites various cases in support of its contention that a final and binding settlement may be judicially enforceable. But these are cases, unlike this one, where the parties *contractually agreed* that settlements would be final and binding.  In *Consolidation Coal*, the court stated that "it is indisputable at this point that any means chosen by the parties for settlement of their differences under a collective bargaining agreement can be judicially enforced in federal court *as long as the settlement is final and binding under the contract*." *United Mine Workers of Am. Dist. No. 5 v. Consolidation Coal Co.*, 666 F.2d 806, 809 (3d Cir. 1981) (emphasis added).  And indeed, *Consolidation Coal* involved a CBA under which "[s]ettlements reached at any step of the grievance procedure shall be final and binding." *Id.* at 808 n.3.

So too in *Barnes & Tucker*, also cited by the Union.  There, "by the express terms of the [CBA], settlements reached at any step [of the grievance procedure] are final and binding on

both parties." *United Mine Workers of Am., Dist. No. 2 v. Barnes & Tucker Co.*, 561 F.2d 1093, 1095 (3d Cir. 1977). Here, the CBA does not contain a similar clause.

The district court, in concluding that it must defer to the parties' chosen dispute-resolution method, relies heavily on *Bakers Union Factory No. 326 v. ITT Cont'l Baking Co., Inc.*, 749 F.2d 350 (6th Cir. 1984). Although that case does offer a lengthy discussion of settlement agreements and arbitration, it has limited application here and is not controlling. In *Bakers Union*, a union filed a formal grievance after an employee was suspended for drinking on the job. *Id.* at 351. The union, the employer, and the employee then entered into a settlement agreement "in accordance with the grievance procedures established by the collective bargaining agreement," *id.*, and the employer rescinded the suspension. Subsequently, the employer contended that the employee failed to abide by the terms of the settlement and fired him. *Id.* at 351–52. The union invoked the grievance procedure to contest the employee's discharge. *Id.* at 352. An arbitrator determined that the firing, although legitimate under the settlement agreement, was too severe and ordered reinstatement. *Id*. When the employer refused to reinstate the employee, the union sued for enforcement of the arbitral award. *Id.*

In that case, both parties—and the arbitrator—recognized that the employee had been fired in accordance with the settlement agreement; the issue was whether the arbitrator exceeded his authority when he disregarded and overrode the express terms of the parties' settlement agreement. *See id.* at 353. Federal courts may properly hear such questions. Here, however, the issue is whether the Union may bypass the CBA's grievance procedures altogether.

*Bakers Union* contemplated that, under certain circumstances, "a party may enforce a settlement agreement in federal court without first submitting the controversy to an arbitrator." *Id.* at 355. But this is the case only when "the agreement is final and binding on the parties." *Id.*

Also, the settlement agreement at issue in *Bakers Union* differs from the one at issue here in a material way: it was brokered pursuant to the formal grievance procedures of a collective bargaining agreement. In contrast, the Settlement Agreement that the Union seeks to enforce here bears neither the blessing of an arbitrator nor the imprimatur of the CBA's grievance process. Rather, the Union alleges that it was reached merely "[f]ollowing discussion and negotiation between [the parties]." The difference is that the Settlement Agreement here,

although involving interpretation and application of the CBA, is not sanctioned by the procedures in the CBA.

Finally, the Union attempts to enforce its Settlement Agreement under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. That statute gives district courts jurisdiction over the general area of "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." As explained above, though, courts may not adjudicate a labor grievance between a Union and an employer when a collective bargaining agreement expressly binds the parties to resolve the grievance through alternate means.

**IV**

This case fits comfortably within existing Supreme Court precedents recognizing the policy in favor of resolving labor disputes through the parties' own agreed-upon processes. Requiring the parties to use the CBA's grievance procedures may create delay, but that is sometimes—though certainly not always—the case with arbitration. We are mindful of the concern that making and then breaking a settlement agreement could be a ploy to prevent ultimate judicial enforcement of a resolution to a labor dispute. But we have no reason to believe that this is a situation in which UPS is continually duping the Union into an unwinnable game. Enforcing the CBA stands to benefit both unions and employers, as both may be assured that their freely contracted promises are binding. "As with all arbitration matters, the matter is one of contract." *United Steelworkers*, 505 F.3d at 424. "Just as two parties need not enter an arbitration contract in the first place," they may choose which questions must be handled by arbitration. *Id.*

The Union and UPS entered into a CBA that provides that "any controversy, complaint, misunderstanding or dispute" that concerns "interpretation, application or observance" of the CBA "shall be handled" in accordance with the CBA's grievance procedures. The parties agree that UPS's alleged breach of the Settlement Agreement constitutes a violation of the CBA. Accordingly, the Union must use the CBA's grievance procedures before seeking judicial relief. Because the Union has failed to state a claim under the CBA, we AFFIRM the district court's judgment dismissing the complaint.

_____

**DISSENT**

_____

CLAY, Circuit Judge, dissenting.  I agree with the majority that the district court had subject matter jurisdiction over this case pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA § 301"), and that dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure was improper.  However, I disagree with the majority's conclusion that Teamsters Local Union 480 ("the Union") must utilize the grievance procedure set forth in the parties' collective bargaining agreement ("CBA") before seeking judicial relief with respect to their claim that United Parcel Service ("UPS") breached the parties' settlement agreement.  The settlement agreement that the Union seeks to enforce against UPS memorialized a final, complete settlement of several individual grievances.  This particular settlement agreement is capable of being interpreted and enforced without reference to the CBA or other documents.  Thus, the Union's complaint that UPS breached the settlement agreement does not concern "interpretation, application, or observance" of the CBA, and therefore does not fall within the grievance procedure provision contained in the CBA.  Because the parties did not agree to subject this dispute to the grievance procedure in the CBA, I respectfully dissent.

Both parties agree that this Court has authority, generally, to enforce a settlement agreement between parties to a CBA.  *See Jones v. Gen. Motors Corp. and United Auto Workers, Local 1112,* 939 F.2d 380 (6th Cir. 1991); *Davis v. Bell Atlantic-West Virginia, Inc.*, 110 F.3d 245 (4th Cir. 1997).  The issue in this case is whether, prior to seeking relief in federal court, the Union must submit its complaint to the grievance process set forth in the CBA.  The Union contends that it may seek immediate relief in federal court for UPS' breach, and seeks a declaratory judgment to enforce the agreement against UPS.  In response, UPS argues that the Union's complaint that UPS breached the settlement agreement falls within the grievance procedure provision in the CBA, and that the Union has not exhausted its remedies under the CBA, including an arbitration requirement.  The majority, like the district court below, holds that the Union must "exhaust the internal grievance process under the CBA," but does not offer any guidance as to what this entails.  Presumably, the majority would require the Union to begin at

step one of the grievance process, which provides, in pertinent part, "[t]he employee shall report [any grievance, complaint, or dispute] to the employee's shop steward in writing within five (5) working days" and "[t]he steward shall attempt to adjust the matter with the supervisor within forty-eight (48) hours." In addition to being impractical, this outcome is legally incorrect.

It is true that "[w]here [a] contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks and citation omitted); *see also United Steelworks of America v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277–278 (6th Cir. 2007). Nonetheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs.*, 475 U.S. at 648.

The CBA provides, in relevant part: "[any] grievance that [is not subject to the National Grievance Procedure] shall be resolved pursuant to the provisions relating to the local, state and area grievance procedures set forth in the applicable Supplement[]. . . ." A grievance is defined as "any controversy, complaint, misunderstanding or dispute *arising as to interpretation, application or observance of the provisions of this Agreement*." (emphasis added).

As a threshold matter, I strongly disagree with the majority's statement that "we need not resolve the question of [whether the dispute over UPS' alleged breach of the settlement agreement is one 'arising as to interpretation, application or observance' of the CBA] because both parties agree that it does." *Majority* at 9. The Union's passing statement that "UPS's breach of the Settlement Agreement constitutes a violation of the arbitration provisions of the CBA" is *not* a concession that the dispute concerns "interpretation, application or observance of [the CBA]." Construing this statement as a concession is improper, especially where "the Settlement Agreement was [not] entered into through the formal grievance process [set forth in the CBA]." *Majority* at 12. Indeed, both parties concede in their arguments on appeal that the settlement agreement, which was freely negotiated and entered into between them, was not arrived at through the mechanism of the CBA grievance process.

The dispute as to whether UPS breached the settlement agreement does not constitute a dispute "as to interpretation, application, or observance" of the CBA.  This particular settlement agreement by its terms was a final, complete agreement that concluded and superseded the parties' prior dealings under the CBA.  It is a freestanding document that does not refer to the CBA or any provision therein.  And, according to the majority, it was not begotten by the CBA. *See Majority* at 12.  The dispute as to whether UPS breached the settlement agreement can be resolved from the four corners of the settlement agreement without reference to the CBA, and concerns only the language of the settlement agreement, and not the CBA.  It involves the interpretation and application of the settlement agreement, and not the CBA.  Quite simply, the grievance provision in the CBA is "not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers*, 474 F.3d at 278.

In reaching the opposite conclusion, the majority summarily affirms the reasoning of the district court that "a dispute concerning the arbitrability of a disagreement about a breach of a settlement agreement can amount to an interpretation or application of the CBA." *Majority* at n.3.  But this reasoning is circular, and constitutes a misstatement of the fundamental dispute in this case.  There are two disputed issues before this Court.  The fundamental dispute is whether UPS breached the settlement agreement.  This is the dispute that was set forth in the Complaint that the Union filed in district court.  The second dispute is whether the fundamental dispute is subject to the grievance procedure outlined in the CBA.  This is the affirmative defense raised by UPS in response to the Union's Complaint.  The district court's analysis conflates these two disputed issues.  While the second dispute "concern[s] the arbitrability of [the fundamental dispute and] can amount to an interpretation or application of the CBA," the fundamental dispute concerns the proper interpretation of the settlement agreement, and does not relate to the CBA at all.  The fundamental dispute is not a dispute "as to interpretation or application of" the CBA, and UPS' affirmative defense cannot bring the Union's claim under the purview of the CBA's grievance procedure provision.  The district court's reasoning, which asserts otherwise, is disingenuous and misleading.

UPS' alternative theory is similarly flawed.  UPS argues that the fundamental dispute is subject to the grievance procedure prescribed in the CBA because "any decision by the Court

here [as to whether UPS breached the settlement agreement] would have to analyze and determine how the parties define, by contract and/or practice, 'extra/coverage work opportunities,' 'out of classification work,' and 'out of classification workers.'" *Appellee Br.* at 16.    Therefore, UPS argues, "any disagreement over whether the June 2010 Settlement Agreement was violated invariably requires the interpretation and application of the CBA." *Appellee Br.* at 16.    But not every dispute that marginally involves the interpretation or application of the CBA is a substantive dispute as to the interpretation or application of the CBA. Indeed, UPS has not alleged that the parties disagree on the meaning of "extra/coverage work opportunities," "out of classification work," or "out of classification workers."   The fact that the court might have to look to the CBA, along with other evidence, simply as background or context for understanding certain language in the settlement agreement does not convert a dispute over the settlement agreement into a dispute over the interpretation or application of the CBA.    This is all the more true where, as in this case, the dispute can be resolved entirely, or almost entirely, by reference to the language of the settlement agreement alone.    In other words, this dispute as to the meaning and application of the settlement agreement did not "arise as to interpretation, application, or observance of" any of the provisions of the CBA, and the dispute is not subject to the grievance procedure provision in the CBA.

Though the majority opinion suggests otherwise, our decision in *Jones v. General Motors Corporation* does not preclude this holding, and has little relevance to the present case.    939 F.2d 380.    Whereas the issue in the present case is whether the parties agreed to submit a dispute concerning the settlement agreement to the grievance procedure, the issue in *Jones* was whether an employee's state law claim against his employer for breach of a settlement agreement was preempted by LMRA § 301.    *Jones* did not involve a grievance provision at all, and is entirely irrelevant to the instant case, in which preemption is not a disputed issue.[1]    *Jones* stands for the well-settled proposition that an employee's claim against his employer for breach of a settlement agreement should be brought in federal court under LMRA § 301; it says nothing about whether or when a dispute over a settlement agreement might "arise as to interpretation, application, or

---

[1]As stated above, the majority is correct that this case was properly brought under LMRA § 301, and a state law breach of contract claim would be preempted for many of the reasons articulated in *Jones.*

observance of" a CBA.**²**   *Jones'* holding that a state law claim for breach of a settlement agreement "require[s] an 'interpretation of the terms' of a CBA triggering § 301 pre-emption" does not contradict a holding that the dispute in the instant case falls outside the scope of the parties' arbitration provision.   939 F.2d at 383.   Even assuming that the dispute in the present case would "require an interpretation of the terms of [the] CBA," the majority still cannot show that the dispute *arose as to* the interpretation of the CBA.   *Jones* is entirely inapplicable to the central issue in the instant case.

In addition to the fact that *Jones* dealt with a wholly different legal question, this case and the *Jones* case are factually distinguishable in a critical way.   The Court in *Jones* observed that the settlement agreement at issue "was arrived at by virtue of a grievance process established by a collective bargaining agreement."   939 F.2d at 382.   In the present case, the settlement agreement was not "an outcome of the grievance process" nor a "decision reached at *any* step of the grievance procedure [established by the CBA]."   *Majority* at 11.

Because the dispute before this Court—whether UPS breached the settlement agreement—is not a dispute "as to the interpretation, application, or observance of [the CBA]," the dispute is not subject to the grievance procedure provision in the CBA.   To hold otherwise would subvert the parties' agreement to resolve their differences pursuant to the settlement agreement into which the parties entered in lieu of the CBA grievance process.   Accordingly, the

---

**²**The majority opinion takes certain language from *Jones* out of context.   The *Jones* opinion states, in relevant part:

> We must . . . decide if Jones's breach of contract suit against GM in reality is a claim under § 301 of the LMRA, and is therefore pre-empted. . . . Pre-emption occurs when a decision on the state claim "is inextricably intertwined with consideration of the terms of the labor contract," *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985), and when application of state law to a dispute "requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 407 (1988). . . . We are faced with a state law claim for breach of a settlement agreement.   This agreement was arrived at by virtue of a grievance process established by a collective bargaining agreement, signed only by the parties engaged in collective bargaining, and promised reinstatement to a job whose terms and conditions are created by and subject to a collective bargaining agreement.   The resolution of this claim will not involve the direct interpretation of a precise term of the CBA, but it will require a court to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a CBA.   Does this process require an "interpretation of the terms" of a CBA triggering § 301 pre-emption?   The district court answered this question in the affirmative, and we agree.

*Jones v. Gen. Motors Corp.*, 939 F.2d 380, 382–83 (6th Cir. 1991).

Union was not required to submit its complaint to the grievance procedure prior to seeking recourse in a court of law. Because the settlement agreement is enforceable in federal court, I would reverse the order of the district court and remand the case for proceedings consistent with this opinion.