NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0541n.06
Case No. 21-3228

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 413, | ) ) ) | **FILED** Nov 24, 2021 DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| THE KROGER CO., dba TAMARACK FARMS DAIRY, | ) ) ) ) | COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Defendant-Appellant. | ) ) | |

Before: CLAY, GIBBONS, and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. This case involves the presumption of arbitrability under a collective bargaining agreement (CBA) between the Kroger Co. and the International Brotherhood of Teamsters, Local Union No. 413 (the Union). They are in a dispute over whether a union steward's grievance regarding certain retirement benefits is subject to arbitration under the parties' CBA. Because Kroger is unable to rebut the presumption in favor of arbitrability, we affirm the district court's grant of summary judgment to the Union that orders arbitration of the grievance.

I.

The CBA at issue, effective October 8, 2017, through October 10, 2020, applies to certain employees at Kroger's Tamarack Farms Dairy operation in Newark, Ohio. The CBA governs "all

of the production, laboratory, and maintenance employees for the Employer in the classifications set forth in the wage schedule in Article 23; and exclude[es] all office clerical employees, professional employees, guards, and supervisors as defined in the [Labor Management Relations] Act, and outside subcontracted services." (Compl., Ex. A, R.1-3, Pg. ID 13.)

Article 5 of the CBA contains grievance and arbitration procedures to govern employee grievances. The CBA defines a grievance as "a dispute between the Employer and employee as to the interpretation or application of any provisions of th[e] Agreement and is limited to the express terms and provisions of th[e] Agreement." (*Id.* at 15.) The aggrieved employee must pursue a multi-step process to settle grievances, including two conferences between the employee and Kroger, before bringing the grievance to the Board of Arbitration. The decision of the arbitrator "shall be final and binding," and the arbitrator "shall not be empowered to alter the terms" of the CBA. (*Id.* at 16.)

The CBA also contains several provisions concerning benefits, including Article 19, Section 19.1, which addresses certain retirement benefits. That provision states that "[a]ll employees of the Employer will be covered by and participate in the Kroger Employees Retirement Benefit Plan. Participation is governed by the terms of the Plan."[1] (*Id.* at 29.) Starting in 2001, Kroger provided retirement benefits through the Kroger Consolidated Retirement Benefit Plan (CRBP).

The dispute underlying this appeal arose in August 2017, when Kroger terminated the CRBP and gave non-union employees the option to take a lump-sum payout of their benefits, roll the funds over to a 401(k) account, or have Kroger purchase an annuity with an insurance company

---

[1] Kroger's benefit manager, Wendy Kennedy, testified that she has no knowledge of the current existence of a plan titled the "Kroger Employees Retirement Benefit Plan." (Kennedy Dep., R. 17, Pg. ID 94–95.) However, according to Kennedy, the Kroger Employees Retirement Benefit Plan later became the Kroger Consolidated Retirement Benefit Plan. (Kennedy Dec., Ex. B, R. 25., Pg. ID 519–20 (listing the history of the CRBP).)

for the benefits. Kroger placed Union employees in a CRBP spin-off plan (CRBP spin-off) and did not give them these distribution options. The Union and Kroger had negotiated the issue of distribution options in 2017, prior to adopting the CBA. But despite their discussion of union members receiving the same options as management for movement of funds, the language of Article 19, Section 19.1 of the CBA ultimately remained unchanged.

Then, on February 20, 2018, Union Steward Jay Laymon filed a grievance: "Based on (Article 19 Section 19.1)[, a]ll Tamarack Bargaining Unit employees participating in the Kroger Consolidated Retirement Benefit Plan (aka Cash Balance Pension Plan), [t]he Company will provide the same payment options as offered to management and non[-]union hourly associates." (Compl., Ex. B, R.1-3, Pg. ID 42.)

But Kroger refused to hear the grievance. After conferencing with Kroger, pursuant to the CBA's grievance and arbitration procedures, the Union notified Kroger that it wished to mediate the issue in September 2018. Starting in January 2019, the parties participated in a mediation session and exchanged information and proposals regarding the matter. Yet when the Union informed Kroger that it wished to proceed to arbitration that June, Kroger disagreed. It stated that Laymon's grievance did not articulate a dispute between Kroger and an employee as to the interpretation or application of any provision of the CBA, so arbitration was not required.

The Union then filed suit to compel arbitration under the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 141 *et seq.* It alleged that Kroger willfully and in bad faith breached the CBA by refusing to arbitrate Laymon's grievance.

Ruling on the cross-motions for summary judgment, the district court first noted that the parties only disputed whether Laymon's grievance falls under the arbitration clause of Article 5, Section 5.1, not whether a valid arbitration clause existed at all. It then applied a presumption of

arbitrability because of the broad arbitration clause in the CBA. It held that the grievance implicates an interpretation of Section 19.1 of the CBA and is not "expressly excluded" from arbitration by the CBA. Because the grievance was not expressly excluded from arbitration by the CBA and the presumption of arbitrability applied, the district court granted summary judgment to the Union and ordered arbitration. Kroger's timely appeal followed.

## II.

We review a district court's grant of summary judgment de novo. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 447 (6th Cir. 2020). On cross-motions for summary judgment, we review factual issues in favor of the party whose motion did not prevail in the district court—here, Kroger. *See B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 598 (6th Cir. 2001). "Similarly, we review de novo the district court's decision to compel arbitration of a particular dispute." *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007) (citing *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000)). In this context, we "must determine whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement." *Teamsters Local Union No. 89 v. Kroger Co.*, 617 F.3d 899, 904 (6th Cir. 2010) (quoting *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 561 (6th Cir. 2008)).

We start with some background of arbitrability in the labor context. The LMRA states that the policy of the United States is to encourage the resolution of CBA disputes through "conciliation, mediation and voluntary arbitration." 29 U.S.C. § 171(b). It also provides that grievance disputes should be resolved "by a method agreed upon by the parties," oftentimes implying arbitration. 29 U.S.C. § 173(d). Building upon this policy, federal courts have "fashion[ed] a body of federal law for the enforcement of . . . collective bargaining agreements,"

including "promises to arbitrate grievances under collective bargaining agreements." *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 450–51 (1957). The Supreme Court held that a CBA is "more than a contract"; rather, "[i]t calls into being a new common law—the common law of a particular industry or of a particular plant." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578–79 (1960).

Our framework for determining arbitrability was built on that foundation. Simply put, our duty is "to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (cleaned up). We "discharge this duty" in two steps, by:

> (1) applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted.

*Id.* In applying this framework, we use "ordinary . . . principles that govern the formation of contracts." *Id.* at 296 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

The parties do not dispute that they are parties to a valid and enforceable arbitration clause in their CBA. (Def. Mot. for Summ. J., R. 21, Pg. ID 280–82; Pl. Mot. for Summ. J., R. 22, Pg. ID 288–91.) That provision, Article 5, Section 5.1, provides for arbitration of any "dispute between the Employer and employee as to the interpretation or application of any provisions of this Agreement and is limited to the express terms and provisions of this Agreement." (Compl., Ex. A, R.1-3, Pg. ID 15.) It is similar to arbitration clauses we have found to be broadly worded. *See, e.g.*, *Kroger*, 617 F.3d at 905 (finding that a clause providing for arbitration of "'any grievance[,] dispute[,] or complaint over the interpretation or application of the contents of this Agreement' raised by 'any employee'" to be broad); *see also Int'l Ass'n of Machinists & Aerospace Workers v. ISP Chems., Inc.*, 261 F. App'x. 841, 846 (6th Cir. 2008) (finding a clause

providing for arbitration of "any difference of opinion or dispute . . . regarding interpretation or application of any provision of this Agreement," but with three specific issues excepted, to be broad).

The parties disagree about the interpretation of Article 5, Section 5.1—namely, whether Laymon's grievance regarding Kroger's failure to "provide the same payment options as offered to management and non[-]union hourly associates" falls within the category of arbitrable issues. (Compl., Ex. B, R.1-3, Pg. ID 42.) *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). As to this issue, the arbitration clause is ambiguous, which we discuss in greater depth below. Whereas the provision could be read, as Kroger contends, to be inapplicable to the retirement benefits question at issue, it also could be read to cover that dispute, as the Union contends.

Because the arbitration agreement is ambiguous regarding coverage of the dispute at hand, we apply the presumption of arbitrability. *See Granite Rock*, 561 U.S. at 301; *see also AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (stating that any "[d]oubts" about whether an arbitration clause covers an asserted dispute "should be resolved in favor of coverage"). That presumption is particularly applicable in cases involving broad arbitration clauses, as is the case here. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 485–86 (6th Cir. 2006).

Applying the presumption of arbitrability, we must compel arbitration unless the presumption is rebutted. *Granite Rock*, 561 U.S. at 301. Kroger attempts to do so with two arguments: that the dispute is expressly excluded by the language of the CBA and that, absent express language, the parties intended to exclude the dispute from arbitration. We address each argument in turn below.

A.  Is this Dispute Expressly Excluded from Arbitration?

A party can rebut the presumption in favor of arbitration if it shows that "the parties have expressly excluded the grievance from arbitration."  *See Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 260–64 (6th Cir. 2010) (collecting cases).  That means Kroger can prevail only if "the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 288 (6th Cir. 2014) (quoting *AT & T Techs.,* 475 U.S. at 650).  "The starting point [is] . . . the language of the Collective Bargaining Agreement." *Bakery, Confectionery, Tobacco Workers & Grain Millers, Int'l Union AFL-CIO v. Kellogg Co.*, 904 F.3d 435, 442 (6th Cir. 2018) (quoting *Salary Policy Emp. Panel v. Tenn. Valley Auth.*, 149 F.3d 485, 491 (6th Cir. 1998)).

The arbitration clause here contains no specific exclusions exempting specific disputes from arbitration.  And in Article 5, Section 5.1, the parties agreed to arbitrate grievances as to the interpretation or application of *any* provision in the CBA.

Kroger argues, however, that the dispute is expressly excluded from the CBA's arbitration clause by the grievance procedures of the CRBP.  According to Kroger, the terms of the CRBP are incorporated into the CBA by virtue of Article 19, Section 19.1.

Kroger is correct that terms can be incorporated into the CBA by reference to another document.  But such incorporation occurs only "where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." *Anheuser-Busch, Inc.*, 626 F.3d at 262 (quoting *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003)); *see also United Steelworkers of Am., AFL-CIO-CLC v. Commonwealth Aluminum Corp.*, 162 F.3d 447, 449 (6th Cir. 1998) (finding that insurance benefits booklets were incorporated by

reference into CBA where CBA referred to booklets by name). "The reference must be clear and unequivocal." *Anheuser-Busch*, 626 F.3d at 262 (quoting *Rinard v. Eastern Co.*, 978 F.2d 265, 269 n.3 (6th Cir. 1992)). We look to the plain language of the CBA. *See Morgan Servs., Inc. v. Loc. 323, Chicago & Cent. States Joint Bd., Amalgamated Clothing & Textile Workers Union, AFL-CIO*, 724 F.2d 1217, 1223 (6th Cir. 1984).

Article 19, Section 19.1 makes no explicit reference to the CRBP. Instead, that provision identifies the "Kroger Employees Retirement Benefit Plan" as the separate document. (Compl., Ex. A, R.1-3, Pg. ID 29 ("All employees of the Employer will be covered by and participate in the Kroger Employees Retirement Benefit Plan. Participation is governed by the terms of the Plan.")) However, the Kroger Employees Retirement Benefit Plan no longer exists. That plan merged with three other plans and then was amended to eventually become the CRBP. (Kennedy Dec., Ex. B, R. 25., Pg. ID 519–20.) The CRBP was terminated on September 1, 2017. (*Id.* ("The Corporation[, Kroger,] adopted an amendment on July 24, 2017 to terminate the Prior Plan[, the Kroger Consolidated Retirement Benefit Plan,] effective as of the proposed termination date of September 1, 2017[.]")) The CRBP spin-off was then created—governed by a separate document with its own grievance procedures. (*Id.* at 547–48.) The CBA is thus ambiguous as to what plan Article 19, Section 19.1 identifies.

Because the plain language of Section 19.1 is ambiguous, we may look at the extrinsic evidence the parties offer. *See Salary Policy Emp. Panel*, 149 F.3d at 493 ("[E]xtrinsic evidence . . . can be considered under the Collective Bargaining Agreement where the language is ambiguous."). Kroger suggests that the Union knew that the Kroger Employee Retirement Benefit Plan referenced in Article 19, Section 19.1 is the CRBP, because the CRBP was named in the grievance and because the benefits are the same under both plans. However, even if the document

could be considered clearly referenced and its identity can be ascertained, it is not clear that the incorporation of the CRBP here would not result in surprise or hardship for the Union. *See Anheuser-Busch, Inc.*, 626 F.3d at 262. The claim procedures in the CRBP govern disputes from a singular person and do not address issues involving a group of employees. (Kennedy Dec., Ex. A, R. 25., Pg. ID 438 (The "Retirement Management Committee" will "determine all facts which are necessary to establish the right of an applicant to benefits under the provisions of the Plan and the amount thereof as herein provided.").) Because Kroger cannot show that the CRBP was clearly identified in Article 19, Section 19.1 and that the Union would not be surprised or face hardship with its incorporation, the dispute was not expressly excluded from arbitration.

B. Is There Forceful Evidence of a Purpose to Exclude this Dispute from Arbitration?

Kroger has one more avenue by which to rebut the presumption in favor of arbitration—offering "forceful evidence" that the parties intended to exclude the dispute from arbitration. *AT & T Techs.*, 475 U.S. at 650 (quoting *Warrior & Gulf Navigation Co.*, 363 U.S. at 584–85) ("In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."). But it offers no such evidence. Instead, Kroger argues that because it continued to provide the benefits articulated in Article 19, Section 19.1 and because Laymon testified that this provision does not address whether Kroger will provide union members the same payment options offered to management and non-union hourly associates, "it follows logically that the parties intended to exclude the subject of the alleged 'grievance' from arbitration." Kroger also points to conversations that occurred during the creation of the CBA regarding the rejected proposal to include the same payment options and retirement benefits for union and non-union employees and the definition of "employee" in the CBA.

However, this evidence speaks to the merits of the case—specifically the interpretation of the language in Article 19, Section 19.1 as to retirement payment options—which we do not look at here. *See General Drivers, Salesmen and Warehousemen's Local Union No. 984 v. Malone & Hyde, Inc.*, 23 F.3d 1039, 1043 (6th Cir. 1994) ("[I]t is not for the courts to weigh the merits of a grievance or to undertake to determine the rights of parties under a collective bargaining agreement."); *see also United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567 (1960) (The underlying "question of contract interpretation [is] for the arbitrator."). Kroger is, therefore, unable to rebut the presumption in this manner either.

Finally, Kroger's contention that *Anheuser-Busch* compels a different outcome is unpersuasive. We did not eliminate the express-exclusion hurdle for all cases involving ERISA-covered retirement plans in *Anheuser-Busch*. *See* 626 F.3d at 262. Rather, we discussed the applicability of incorporated terms from a referenced document for purposes of the express-exclusion exception to the presumption of arbitrability. Furthermore, the grievance procedures in the plan in *Anheuser-Busch* directly dealt with the dispute at issue. *See Local 1982, Int'l Longshoremen's Ass'n v. Midwest Terminals of Toledo, Int'l, Inc.*, 560 F. App'x. 529, 537 (6th Cir. 2014) (noting that *Anheuser-Busch* and *Int'l Ass'n of Machinists v. AK Steel Corp.*, 615 F.3d 706, 711–13 (6th Cir. 2010) "involved CBA clauses that excluded certain categories of grievances from arbitration without any arguable ambiguity").

### III.

A presumption of arbitrability applies to the CBA's broad arbitration clause. And both of Kroger's attempts to rebut the presumption fall short. Accordingly, for the foregoing reasons, we affirm the district court's grant of summary judgment to the Union and denial of summary judgment to Kroger.